## Elkins & Company *versus* The Susquehanna Mutual Fire Insurance Company.

1. A., an insurance broker, secured an application for a policy of fire insurance from B., which he gave to C., who, while he did not have a certificate of appointment as agent under seal from D., an insurance company, received applications, forwarded them, received policies, which he delivered to the assured, and collected premiums therefor for D. C. forwarded B.'s application to D., received a policy of insurance

[Elkins & Co. v. Susquehanna Fire Ins. Co.]

and delivered the same to A., who delivered it to B. C. about the same time had secured for A. two other policies of insurance for B. He charged the premiums on all the policies, amounting to $200.82, to A. B.'s property covered by D.'s policy was destroyed by fire. A. had paid on account of said premiums to C. $100 before the fire, and the remainder of the premiums after the fire. C. forwarded the premium received to D. after the fire, which D. refused to receive. In an action by B. against D. to recover the amount of his loss on his policy of insurance, D. defended on the ground that there was no liability under the provisions of the policy until the premium was actually paid; the Court entered a compulsory nonsuit, and overruled a motion to take it off.

*Held*, that D. could waive the provisions of the policy requiring the actual payment of the premium in full before there should be any liability on part of D. under it, and whether or not this provision of the policy was waived should have been, under the evidence, submitted to the jury.

2. The Supreme Court, in reviewing a judgment of the Court below in refusing to take off a compulsory nonsuit, will take the plaintiff's evidence as true: not only the facts directly established, but every reasonable inference therefrom.

April 1st, 1886. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county*: Of January Term 1886, No. 61.

Assumpsit by William L. Elkins, trading as William L. Elkins & Company, against the Susquehanna Mutual Fire Insurance Company of Harrisburg, P., on a policy of fire insurance issued by the defendants to the plaintiff. Pleas, non assumpsit, payment, set-off with leave.

The following is all the evidence in the case:

Policy Susquehanna Fire Insurance Co., to William L. Elkins & Co., No. 3784, for $1,575. Dated December 10th, 1880. Expired December 1st, 1881. Offered in evidence:

Execution admitted by defendants, and the policy, together with the by-laws of the company, admitted in evidence.

Admitted, that the insured property was damaged by fire on March 9th, 1881, and that the amount of loss for which this policy would be liable, if liable for anything, was $710.36.

Robert Crane, being duly sworn, testified as follows:

Q. Were you the agent of the Susquehanna Insurance Company in 1880?

(Question objected to. Objection overruled. Exception for defendants.)

I was in December, 1880, the agent of the Susquehanna Fire Insurance Company for certain purposes; to receive applications, forward them to the company, and if approved, they to write the policies, and send me the policies; I to make record of the policies, and deliver to the assured or to his

agent. I collected the premiums, and remitted the same to the company, less my commission. I received this policy from the company direct by mail, and delivered it to Thomas J. Lancaster. I had a running account with Mr. Lancaster. In March, about the day before the fire at the Elkins' property, he paid me $100 on account. I kept also an account of applications, policies delivered, and the premiums received for the company. The payment was on March 8th, 1881, on account of policies delivered to Mr. Lancaster. The $100 was part payment on account of the three policies delivered to him; $100 did not balance the account; there remained due $100.82. I delivered Lancaster three policies for Mr. Elkins. The date was December 1st, 1880; premium due, $236.25. On March 8th I received check for $100, the first payment on account of these premiums. March 15th, 1881, I received a check for balance, $100.82. These were the only payments made. He was not indebted to me for any other premiums. I allowed him $35.43 as commission.

(Checks shown to witness.) These are the checks; the checks were paid. I deposited the checks in bank; I sent my check to the insurance company for the premium on that policy, less commission, on March 16th, 1881.

Cross-examined.—I commenced business with the Susquehanna Mutual Insurance Company, April 20th, 1880; my appointment was in writing. I did not have a certificate under seal. I got permission from them to send them business, and it resulted in an agency for certain purposes. I sent them business as agent, and signed my name as such in communications to them. Such applications as they approved, they accepted or declined, and sent me policies. My principal business is insurance agent and broker. I call myself manager for the West Philadelphia Agency. I was agent for the Lebanon Insurance Company at that time. I was agent for the Home of New York. I have stated what my business was with the Susquehanna Company. There were a good many other details; when changes were desired in policies, I forwarded to company and they returned to me and I made a record of them. I did not make any indorsements on policies. I did not always sign my name as Robert Crane, manager. Ninety-nine times out of one hundred I signed as agent. I received this money in response to a bill sent to Mr. Lancaster. (Bill shown witness; checks and letter shown witness.) That is the check and that is the letter. (Letters of March 16th, 1881, and April 1st, 1881, and reply of company, dated March 19th, 1881, shown witness.)

I cannot say whether letters were addressed to me by the company as agent or not. The policy was issued in Decem-

ber and given to Mr. Lancaster a day or two afterwards.  I have charged Mr. Lancaster with it December 1st.  January 4th, I rendered a bill; my bill was $200.82, which was for the plaintiff's insurance in different companies.  My custom was to deliver the policies when received, or a day or two afterwards.  The premium on the policy was $78.75.  On March 15th balance was paid.  The first payment was not sufficient to pay all.  The Susquehanna policy being the last received, I applied the money on the two first received.  (Letter of March 10th, 1881, shown witness.)  Check I sent to company was returned to me.  They refused to accept it.  I sent check to the Lebanon on March 4th. 1881, for $100, which settled their account with me.  On March 4th I paid the Lebanon, which closed their account, including the Elkins' premium. My book does not show when I paid the Home.

Re-examined.—Q. To whom did the company look for payment of the premium?

(Objected to.  Objection sustained.)

Thomas J. Lancaster, sworn:

I placed this insurance for Mr. Elkins with Mr. Crane.  I received the policy from Mr. Crane about the middle of December.  Crane procured the policies for me from the companies.  Policies were delivered to plaintiff about the latter part of December.  I rendered bills to Mr. Elkins about once in three months.  I paid Crane, as he has stated.

Cross-examined.—I was an insurance broker; acted for Mr. Elkins in this matter.

Plaintiff now offers in evidence bill from Crane to Lancaster, as follows:

PHILADELPHIA, January 4th, 1881.

| | | | | |
|---|---|---|---|---|
| December 1st, 1880. | To  19,164, Elkins, | . . . | $ 78 | 75 |
| " | 309,537,   " | . . . | 78 | 75 |
| " | 3,784,   " | . . . | 78 | 75 |
| | | $23 62 | $236 | 25 |
| Less 15 per cent. commission, | . . | 11 81 | 35 | 43 |
| | | | $200 | 82 |
| March 8th, 1881, check, . . . . . . . . . . . | | | 100 | 00 |
| | | | $100 | 82 |

Do we agree?

March 15th, 1881, received one hundred $\frac{82}{100}$ dollars, balance due on the above.

ROBERT CRANE, Manager.

[Elkins & Co. *v.* Susquehanna Fire Ins. Co.]

No. 9,117.            PHILADELPHIA, March 8th, 1881.
*Central National Bank:*
Pay to the order of R. Crane, one hundred dollars.
$100.            THOMAS J. LANCASTER.

No. 1,489.            PHILADELPHIA, March 15th, 1881.
*People's Bank:*
Pay to the order of Robert Crane, one hundred $\frac{82}{100}$ dollars,
$100.82.            THOMAS J. LANCASTER.

Robert Crane, recalled and examined by trial judge:
*Q.* Point to the entry made when you received the money?
*A.* March 8th, 1881, by check, $100.
*Q.* What entry did you make when you received the policies?
*A.* December 1st, 1880, To  19,164, Elkins,  .  .  $78  75
"            309,507,    "    .  .    78  75
"            3,784,    "    .  .    78  75

Elkins was the assured.
*Q.* What time did you deliver the policies?
*A.* Can't say with certainty, but I think I received the Susquehanna last.   My register shows that I received the policies in the following order:   First, the Lebanon; then the Home, and last, the Susquehanna.   I delivered each one within a day after I received it, at separate dates.   I charged myself in the day book with the premium.   I was responsible for the premium.   They looked to me for the payment of the premium or the return of the policy.   I often advanced the money to the companies after I delivered the policy.   I was obligated to pay the company the premium after I had received and delivered the policy as agent of the company.

On motion of the defendant the Court, HARE, P. J., granted a compulsory nonsuit.   A motion was made to take off this nonsuit, which was overruled.

The plaintiff thereupon took this writ, assigning for error the refusal of the Court to take off the nonsuit.

*Alexander P. Colesberry* (*Charles B. McMichael* with him), for plaintiff in error.—The extent of the agent's authority is a question for the jury: Sheldon *v.* Conn. Mutual Insurance Co., 25 Conn., 207; Hough *v.* City Fire Insurance Co., 29 Id., 10; Farmers' Insurance Co. *v.* Taylor, 73 Pa. St., 342.

It should have been left to the jury to say whether Crane received the premium as agent of the company.

The rule laid down in Marland *v.* Royal Ins. Co., 21 P. F. S., 396; Shaffer *v.* Ins. Co., 8 Norris, 296; Pottsville Mutual Ins. Co. *v.* Minnequa Spring Co., 11 W. N. C., 507, does not

apply here, because in none of those cases was there payment of the premium to the company or its agent.

A late decision by McCREARY, J., Trankle v. Penn. Ins. Co., upon this point is as follows:

Where a policy was forwarded to the insured by mail by the agents, with a bill for the premium, in which the insured was set down as debtor to the agents, the premium was not remitted until after the loss. The policy stipulated that it should not be binding until payment of premium. The agents claimed that they were personally liable to the company for the premiums. The agents were accustomed to delivering policies without payment of premium, with the apparent consent of the company. Held, that payment was waived by delivering the policy, and the company was liable for the loss: Miller v. Ins. Co., 12 Wall., 285; Commercial Ins. Co. v. Union Ins. Co., 19 How., 318; Ins. Co. v. Ball, 20 Wall., 560; Trankle v. Pennsylvania Fire Ins. Co., 12 Insurance Law Jour., 1883. p. 616; The Universal Fire Ins. Co. v. Block, 43 Leg. Int., 46; Riley v. Commonwealth Mutual Fire Ins. Co., 43 Leg. Int., March 12th, 1886.

*James C. Sellers*, for defendant in error.—1. It is settled beyond dispute that where a policy of insurance requires the premium to be actually paid before the liability of the insurer shall attach, the insurer will not be liable for a loss occurring before the premium is so paid: Marland v. Royal Ins. Co., 21 P. F. S., 393; Schaffer v. Mutual Fire Ins. Co., 8 Norris, 296; Greene v. Lycoming Fire Ins. Co., 10 Id., 387; Pottsville Mutual Ins. Co. v. Minnequa Springs Improvement Co., 4 Out., 137.

The part payment of the premium would not render the company liable. A policy of insurance is an entire contract. Until the whole consideration passed to the insurers, their liability would not attach. A person cannot recover for part performance of an entire contract where he has failed in the performance on his part: Martin v. Schoenberger, 8 W. & S., 367; Shaw v. Turnpike Co., 2 P. & W., 454.

There was, also, no evidence of any authority on the part of Crane to waive the condition requiring pre-payment of the premium. By the terms of the policy a condition could be waived only by " a distinct specific agreement, clearly expressed and indorsed on the policy."

A waiver could take place only in the manner stipulated in the policy: Waynesboro Ins. Co. v. Conover, 2 Out., 384; Ins. Co. v. Improvement Co., *supra;* Universal Ins. Co. v. Weiss, 10 Out., 20.

2. But there was absolutely no evidence of any authority on the part of Crane to collect the premium for the company.

He did not himself testify that he had any such power or authority.

But let us go a step further. The policy by condition twelve provided that " if the premium on this policy shall be paid to any person or persons other than the duly appointed or authorized agent of this company, such payment shall be at the sole risk of the assured."

When the assured " received the policy he must be presumed to have received it with full knowledge of its contents," including this condition : Ins. Co. *v.* Improvement Co., *supra.*

A party who avails himself of the acts of an agent must, in order to charge the principal, prove the authority under which the agent acted. The burden of the proof lies on him to establish the agency and the extent of it: Hays *v.* Lynn, 7 Watts, 524 ; Moore *v.* Patterson, 4 Casey, 505 ; Underwriters' Association *v.* George, 1 Out., 238.

3. Were the provisions of the by-laws binding upon the assured ?

The company defendant was a mutual company. Persons insured in a mutual insurance company are bound to become informed of its by-laws: Susquehanna Ins. Co. *v.* Perrine, 7 W. & S., 348 ; Mitchell *v.* Lycoming Ins. Co., 1 P. F. S., 402 ; Diehl *v.* Adams Co. Ins. Co., 8 Id., 443.

In addition to this, by the terms of the policy, the by-laws were " declared to be a part of this contract," etc.

Where an application, or other paper, is made by the policy a part of the contract, the policy is inadmissible without the paper referred to : Lycoming Ins. Co. *v.* Sailer, 17 P. F. S., 108 ; Underwriters' Association *v.* George, *supra ;* Lycoming Ins. Co. *v.* Storrs, 1 Out., 354 ; Crawford Co. Ins. Co. *v.* Cochran, 7 Norris, 230.

There was also no evidence that the plaintiff had complied with the provision of said condition ten, requiring a particular account of the loss, containing certain proofs of loss therein specified, to be furnished to the secretary within thirty days after the loss.

Compliance with this condition, unless waived by the company, was also a condition precedent to recovery : Commonwealth Ins. Co. *v.* Sennett, 5 Wr., 161 ; Beatty *v.* Lycoming Ins. Co., 16 P. F. S., 9 ; Mueller *v.* South Side Ins. Co., 6 Norris, 399 ; Universal Ins. Co. *v.* Weiss, *supra.*

There was no testimony offered to show a waiver, or excuse for non-performance, of either of these conditions.

Mr. Justice CLARK delivered the opinion of the court October 4th, 1886.

The policy of fire insurance upon which this suit is brought

contained the following express stipulation : "This company shall not be liable by virtue of this policy or any renewal thereof, until the premium therefor be actually paid," etc.

It was competent, however, for the company to waive this provision; they were not bound to adhere to this clause of their contract, inserted solely for their protection, if they chose to dispense with it. Whether or not the company did dispense with it, was perhaps the question in the cause; whether there was evidence from which that fact might fairly be inferred, is the question for consideration here.

That Robert Crane, at the time the policy was applied for, was the defendant's agent, for some purpose, is plain; what power he possessed to bind his principal, with reference to the payment of the premium, must be ascertained from an examination of the testimony. The court below having entered a compulsory nonsuit, the plaintiff's evidence must be taken as true; not only the facts directly established, but every reasonable inference therefrom.

Crane, having been called as a witness, testified on this branch of the case as follows :

"I was, in December, 1880, the agent of the Susquehanna Mutual Insurance Company for certain purposes: to receive applications, forward them to the company, and, if approved, they to write the policies, and send me the policies—I to make record of the policies, and to deliver to the assured or his agent. I collected the premiums and remitted the same to the company, less my commissions. I received this policy from the company direct by mail, and delivered it to Thomas J. Lancaster. I had a running account with Mr. Lancaster. In March, the day before the fire at the Elkins's property, he paid me $100 on account."

Upon cross-examination, he said :

"I commenced business with the Susquehanna Insurance Company, April 20th, 1880 ; my appointment was in writing. I did not have a certificate under seal. I got permission from them to send them business, and it resulted in an agency for certain purposes. I sent them business as agent, and signed my name as such in communications to them. There were a good many other details. I did not always sign my name as Robert Crane, manager. Ninety-nine times out of one hundred I signed as agent."

Being recalled and examined by trial judge, Crane testified : "I charged myself in the day-book with the premium. I was responsible for the premium. They looked to me for the payment of the premium or the return of the policy. I often advanced the money to the companies. I was obligated to pay the company the premium after I had received and delivered the policy, as agent of the company."

From this it appears that Crane had power, on receipt of a policy, to deliver it to the assured, or to his agent, and to collect the premiums. The company looked to Crane, either for the return of the policy, or for the premium. Upon delivery of the policy, he was obligated to pay the premium, as for his own debt. He, therefore, kept an account with the company, and charged himself with the premiums, as the policies were delivered, and took credit with any remittances he might make.

Now if it be true, that an arrangement to this effect existed between the company and Crane, and that may be fairly inferred from the evidence, the arrangement would seem to indicate that the company was content to accept the responsibility of their own agent for such sums as he might receive, or otherwise provide for, on delivery of the policies, and to substitute the personal liability of the agent in the place of the security which the suspension clause in their contract afforded.

This implication is greatly strengthened by the course of business which the agent pursued in the conduct of the company's business. He delivered such policies as he chose, and charged the premiums in an account which he kept. He had a running account with Lancaster, and the premiums for this insurance were charged up to Lancaster when the policy in suit was delivered to him. The effect of such a course of business as respects Crane certainly was to substitute the liability of Lancaster for that of the assured, and Lancaster says he usually rendered bills to Mr. Elkins once in three months.

In view of the course of business pursued by this company with Crane, and by this agent in the consummation of their contracts, we think the implication might fairly arise that any absolute requirement of the policy, as to the actual prepayment of the premiums, had been dispensed with, and that the obligation of the agent to pay the premium was in effect the payment of it by the assured. If Crane had advanced the money to the company, and delivered the policy, no one can doubt that it would have taken immediate effect, and in what respect can there be any difference, in principle, if Crane, with the company's consent, assumed the payment, thus substituting his personal liability in place of the money? Lancaster became debtor to Crane and Crane to the company, and this, in view of the course of business pursued by the company, would, as between the insurer and the insured, we think, be equivalent to actual payment.

We think there was enough in this case to require its submission to the jury.

The judgment is therefore reversed, and a *venire facias de novo* awarded.