## McClelland v. Rush, Appellant.

[Marked to be reported.]

150    57
214   329

*Lease—Privilege of extension—Statute of frauds.*

A provision in a written lease for five years, for an extension for a further period of five years, on the same terms, at the option of the lessee, by notice in writing, at least three months before the expiration of the first term, is not within the Statute of Frauds, as the term embraced in the renewal is created and defined by the lease itself.

*Written notice of extension—Waiver.*

The lessor may waive the provision for a written notice of the extension of a lease and accept an oral notice, and where there is evidence of such waiver it is error to take the case from the jury because the notice was not in writing.

Argued May 11, 1892. Appeal, No. 7, July T., 1892, from judgment of C. P. Fayette Co., Dec. T., 1890, No. 158, on verdict for plaintiff in ejectment. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

On the trial, before EWING, J., plaintiff offered in evidence precipe and writ of ejectment, issued Oct. 16, 1890, for the property in dispute, a hotel property. The further facts appear by the opinion of the Supreme Court.

The court affirmed the following point for plaintiff :

" Under all the evidence in this cause the verdict must be for the plaintiff for the premises described in the writ : " [1]

The court refused the following points for defendants :

" 1. If the jury find from the testimony that the defendant, prior to June 1, 1890, notified the plaintiff verbally that he elected to extend the first term of five years, and thereupon the plaintiff by her acts and declarations gave defendant to understand that no further or other notice was required of him in regard thereto, then the plaintiff would be estopped from setting up want of written notice and their verdict should be for the defendant." [2]

" 2. If the jury find from the testimony that the plaintiff waived the written notice required by the terms of the agreement, then their verdict should be for the defendant." [3]

" 3. If the jury believe that the acts and declarations of the plaintiff prior to June 1, 1890, were such as to lead the defendant to believe that the lease had been extended for another period of five years, and that no further notice was necessary on his part, then the verdict should be for the defendant." [4]

" 4. If the jury believe the testimony of defendant in regard to the extension of the lease, it would operate to create a tenancy from year to year, and this suit having been brought prior to the termination of the first year, the plaintiff is not entitled to recover." [5]

The court below charged the jury, *inter alia*, as follows :

" I am inclined to the view that the provisions of the Act of 1772 would prevent the defendant from retaining possession of this property under whatever agreement he may have had with the plaintiff prior to the first of June, 1890, and, entertaining that view, I instruct you that under all the evidence in this case the plaintiff is entitled to your verdict." [6]

The court below discharged a rule for a new trial, in an opinion, *inter alia*, as follows, by EWING, J.:

" The lease calls for a ' notice in writing,' and to substitute a verbal notice is to alter the written agreement of the parties

by parol without even an allegation of fraud, accident or mistake in its execution and to make a new and parol agreement between the parties for a lease of real estate for five years. That is prohibited by the Act of March 21, 1772. This is shown very clearly by Justice Cooley in the case of Beller v. Robinson, 50 Mich. 264, and a careful study of that opinion has greatly influenced my own. The Michigan statute provides that 'every contract for the leasing for a longer period than one year, or for the sale of any lands shall be void, unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing.' The similarity of the statutes and the resemblance of the cases make the case referred to, in the absence of any case in point in our own state, of decided weight in this case."

*Errors assigned* were (1–5) answers to point, and (6) charge, quoting them respectively.

*A. D. Boyd*, of *Boyd & Umbel*, with him *S. E. Ewing*, for appellants.—The evidence [quoted in the opinion of the Supreme Court] shows waiver of the written notice, and estoppel.

While the doctrine of estoppel, as applicable to real estate, violates the letter of the Statute of Frauds of March 21, 1772, equity has adopted it to enforce justice, even though in some measure it might give rise to that uncertainty which the statute was meant to obviate: 2 Reed, St. of Frauds, § 744; Clarke v. Vankirk, 14 S. & R. 354; Schettiger v. Hopple, 3 Gr. 55; Dickson v. Green, 24 Miss. 614; Bigelow, Estoppel, page 712. This doctrine seems to have been excluded from the courts in Michigan: 2 Reed, supra. The case of Beller v. Robinson, is therefore no authority in this state.

Substantial compliance with the giving of notice of the tenant's election for renewal is sufficient, and a failure to give a written notice, as required by the lease, is not fatal, if it can be shown that a fair intimation of an intention to renew has been given in any way: Jackson v. Gross, L. & T., page 576. Non-performance of a condition by the lessee is excused when occasioned by the act of the lessor: Ib., page 34.

Conceding the above contention, there would be at least a

tenancy from year to year: Stover. v. Cadwallader, 2 Penny. 117; Dumn v. Rothermel, 112 Pa. 272.

*S. L. Mestrezat*, with him *Chas. A. O'Brien*, for appellee.— The evidence does not establish an express waiver, and it is not inconsistent with future notice as provided by the lease.

The attempt to raise an estoppel is based on the assertion that appellee was bound to tell appellant what his own written contract was.

Plaintiff's contention amounts to the creation of a term for five years by parol. This cannot be allowed: McDowell v. Simpson, 3 Watts 135. The question is wholly for the court: Dumn v. Rothermel, 112 Pa. 272; Whiting v. Pittsburgh Opera House Co., 88 Pa. 100. The exact point has been ruled by Judge Cooley [quoting his language], in Beller v. Robinson, 50 Mich. 264.

Possession can have no weight in determining the validity of a lease exceeding three years, where such possession is a mere holding under a prior lease: Jones v. Peterman, 3 S. & R. 546. It can have no weight in establishing a yearly tenancy. There was no payment or acceptance of rent or other circumstance indicating a tenancy from year to year, as in McDowell v. Simpson, and Dumn v. Rothermel, supra.

OPINION BY MR. JUSTICE GREEN, June 1, 1892.

The agreement. between the parties gave, in its first clause, a lease to the defendant of the property in question for the definite term of five years from Sept. 1, 1885, at a stipulated rent. The second clause is in the following words, viz.: "The party of the second part to have the privilege of an extension of said term of five years for a further period of five years from the expiration thereof, at his own option, on the same terms, by notice in writing to the parties of the first part, or their assigns, at least three months before the expiration of the term of five years first above mentioned."

It will be perceived at once that if the defendant had exercised his option to extend the term by a written notice to that effect, he would have been entitled to hold the premises for the full term of ten years. To accomplish this result, it required only a notice in writing, of the lessee's intention or desire to extend the term. No new contract was necessary

either to create a new term or to define its conditions. The lessors were bound to accept the enlarged tenancy upon the same terms already provided by the existing lease, and, as to them, nothing was to be done on their part for the creation of the full term of ten years. When the notice from the lessee was given and received they were bound for the whole ten years. It was a mistake, therefore, to treat the right of the lessee to the extended term as something which was to be determined by a new contract. That right was fixed by, and was a part of, the original contract. Hence it follows that, if the option of the lessee to have the extended term was exercised in a way which the law would recognize as sufficient to bind the lessors, the lessee would hold the premises for the full term of ten years by virtue of the original lease, which was in writing and sealed by the parties. Therefore no question as to the application of the statute of frauds arises. If the lessee did not give a notice such as the law would enforce, his estate terminated at the end of the first period of five years; if he did give such a notice, it would continue to the end of the second period of five years. In either event, the lease itself created and defined the term, and the statute of frauds has nothing to do with the case.

The only question requiring consideration, then, is as to the character of the notice. It was not in writing. But the lessee gave quite considerable proof of the giving of a verbal notice of his intention to extend the lease to the plaintiff, who had become sole lessor by the acquisition of her co-lessor's interest in the lease, and of her express assent to the extension before the three months' period of the notice had commenced to run. The defendant himself testified: " I had two or three conversations with Mrs. McClelland prior to the 1st of June, 1890, in regard to exercising my option of extending this lease for the further term of five years." After detailing some conversation about purchasing the property, he was asked: " Q. Just leave that out, Mr. Rush, and go on and state what was said about the extension of this lease? A. Well, she told me that it was my property for five years more; I told her I had made up my mind to take it, and she said it was all right, that I had it for five years more; I could not give exactly the date; it was before June, though; before time to give any notice; it

was a month or more before the 1st of June, 1890; she said that it was my property for the next five years; that I had it for five years more." He testified to another conversation, also before the first of June, in which she wanted him to buy the Jennings property and let her have her property back, to which he replied: "I told her no; that I had the property for six years more, and I intended to stay there. 'No,' she said, 'you haven't got it for six years, it is only for five years;' and I says, 'yes, five years from the 1st of September.' She says, 'yes, you have it for that time; it is your property from that time on;' and I asked her if that was all satisfactory to her, and she said it was; that she did not want the property herself, and she would rather I would be in it than anybody else; that we had always got along splendidly, and that I was the best friend she had; and said that she was satisfied."

If this testimony was believed by the jury, it not only proved that a full verbal notice of intention to extend the time was given directly to the lessor, but also that it was accepted by her as such a notice, that no objection was made to its not being in writing, and, further, that she thereupon expressly agreed that the lessee might have the property for the full extended term of five years. If it was legally possible for her to waive the giving of a written notice, she certainly did waive it, if the witness told the truth.

In addition to the foregoing, it was admitted on the trial that Henry W. Gaddis would testify, "that the plaintiff, Mrs. McClelland, told him, prior to June 1, 1890, and after a conversation between plaintiff and defendant in regard to extending the term of five years, that Mr. Rush had notified her, not in writing, that he would keep the hotel for the additional five years, and that she had agreed that he should, and that it was now his for five years more; that this, Mr. Gaddis communicated to Mr. Rush prior to June 1, 1890. This with like effect as if Mr. Gaddis had testified thereto before the jury." This testimony also, if believed by the jury, would prove a clear waiver of the written notice, and an express assent to the extension for five years.

Mrs. Jane Miller, a daughter of the defendant, testified to a conversation before June 1, 1890, between the plaintiff and the defendant, in which the plaintiff said: "Well, Mr. Rush, you

have decided then to stay another five years? And papa says, 'I certainly have.' She says, 'all right,' and left the room; seemed in a very good humor and very pleasant." Mrs. Holmes, another daughter, testified to a conversation between plaintiff and defendant, in which the plaintiff said: "'I suppose if you don't get a license you wont want the house;' and he says, 'yes, m'am, I will; I have it for five years more;' and she says, 'yes, I know you have it for another five years.' Papa says, as he left her, 'I suppose you are satisfied, Mrs. Mac?' 'Oh, certainly, Mr. Rush, you don't need to bother any more about it.'"

The foregoing testimony also, if believed, proves a full assent on the plaintiff's part to another term of five years, and, in addition, that the defendant need do nothing further about the matter, which would be also an express waiver of any further notice than she had already received.

The learned court below withdrew the case from the jury and directed a verdict for the plaintiff, upon the theory that the Statute of Frauds of 1772, which requires that all estates in land for a period of three years or more should be evidenced in writing, ruled the case adversely to the defendant. We cannot assent to that view of the case for the reasons already stated.

We are of opinion that the case should have been submitted to the jury upon the question whether the plaintiff waived her right to a written notice of the extension of the term, and, if she did, that the defendant was entitled to a verdict so far as that subject was concerned. We know of no reason why such a right as this could not be waived by parol. Such a waiver is not contrary to any principle of public policy or positive law. The circumstances in which rights stipulated for, whether in writing or otherwise, may be waived are so very numerous and so variant, and established by so many decisions of this and other courts, that it would be a wearisome labor to review the subject in detail.

In Lauman *v.* Young, 31 Pa. 306, we held that acquiescence in acts inconsistent with a clause of forfeiture will dispense with a right to claim it.

In the case of Lentz's Accounts, 5 Pa. 103, we decided that the statutes limiting liens, unless certain proceedings are adopted, may be waived by parol agreement of the parties entitled to their benefit.

The cases in which provisions in insurance policies have been held to be subject to waiver by parol are very numerous, extending, in some cases, to express prohibitions of all waivers unless they are in writing. Some of these cases may be merely referred to: Elkins v. Ins. Co., 113 Pa. 386 ; Thierolf v. Ins. Co., 110 Pa. 37 ; Ins. Co. v. Erb, 112 Pa. 149 ; McFarland v. Ins. Co., 134 Pa. 590 ; Bonnert v. Ins. Co., 129 Pa. 558.

In Duffield v. Hue, 129 Pa. 94, we held that the forfeiture of an oil lease for failure of the lessee to put down a seventh well in a stipulated time is waived by acquiescence in the failure to · put down in time the two preceding wells.

We sustain the 1st, 2d, 3d, 4th and 6th assignments of error. The 5th is not material.

Judgment reversed and new venire awarded.