**202 MARKETPLACE**

v.

**EVANS PRODUCTS COMPANY.**

**EVANS PRODUCTS COMPANY**

v.

**William J. HEALEY, Robert T. Healey and 202 Marketplace Corp., trading as 202 Marketplace.**

**Civ. A. No. 82–4620.**

United States District Court,
E.D. Pennsylvania.

Aug. 21, 1986.

See also 593 F.Supp. 1133.

Albert Sardella, West Chester, Pa., for plaintiff.

George E. Lieberman, Mark H. MacQueen, Phila., Pa., for Evans Products Co.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff landlord seeks a declaratory judgment that defendant tenant has defaulted on various covenants of a lease defendant entered into with plaintiff's predecessor and that plaintiff, therefore, has the right to terminate said lease.

The parties have submitted an evidentiary record and have agreed that I should decide this case, sitting without a jury, based upon that record. What follows constitutes my findings of fact and conclusions of law.

Defendant Evans Products Company is a Delaware corporation which has its principal place of business in Oregon. Plaintiff 202 Marketplace is a Pennsylvania partnership, all of whose partners are citizens of states other than Delaware or Oregon. The amount in controversy is more than $10,000. I therefore have subject matter jurisdiction over this lawsuit.

Plaintiff alleges that defendant violated the lease (1) by improperly maintaining the exterior of the demised premises, (2) by using areas outside of the demised premises which it was not permitted to use under the lease, (3) by allowing trash and debris to accumulate where they were not permitted, and (4) by advertising in ways prohibited by the lease.

Since plaintiff has established its right to terminate the lease due to defendant's use of areas outside of the demised premises, I need not consider plaintiff's other allegations.

Defendant rents a store and storage space in a shopping center owned by plaintiff. The lease demised a specific portion of the shopping center to the defendant and then proceeded to discuss the center's common areas.

Such parts of the Shopping Center as are not covered by store buildings or demised to Tenant according to the attached plot plan shall be called the "common area." The common area shall be maintained for unobstructed pedestrian traffic and for the parking of automobiles and other passenger vehicles of the Tenant and all persons trading with or doing business with Tenant and other occupants of premises located in the said Shopping Center.

According to the lease, the common areas were "for the joint use of all tenants, customers, invitees, and employees."

The lease also provided a mechanism by which the landlord could regain possession of the demised premises if the defendant defaulted on any of its covenants.

It is agreed that if any rents shall be in default or if Tenant shall default in any of the covenants herein contained, and should such default continue for thirty (30) days after receipt by Tenant of written notice thereof, it shall be lawful for Landlord to re-enter the demised premises and again have and enjoy the same.

On May 12, 1982, Joseph Schwartz, plaintiff's independent property manager, wrote defendant complaining that lumber and other merchandise were being stored outside of defendant's "fenced area," and requested that defendant move its inventory inside its portion of the shopping center. On July 16, Robert T. Healey, one of plaintiff's partners, wrote defendant stating

that plaintiff planned to restrict defendant "from using the exterior of the premises, which is common area, for the portable buildings that you sell, as we feel this adversely affects the center." On August 12, Schwartz again wrote defendant complaining that wood pallets, tractor-trailers and storage sheds were still being illegally stored in the center's common area outside the rented portion of defendant's premises.

On August 17, 1982, more than three months after plaintiff's first written complaint, plaintiff's attorney wrote defendant terminating the lease due to, among other things, defendant's use of areas not demised to defendant by the lease. Although this letter could be construed as somewhat premature, in that the lease gives the defendant thirty days to cure after receiving notice of default, the letter clearly constitutes notice that plaintiff considered defendant's actions violations of its obligations under the lease. From that point on defendant clearly was aware that it had thirty days to cure. Not only does the letter refer to the thirty day cure period in another section, but since defendant drafted the form lease which comprises most of the parties' agreement, including all of the sections at issue in this controversy, defendant was familiar with the lease and its provision for a thirty day cure period.

The evidence submitted by the parties persuades me that this defect in defendant's performance was not cured. Leo J. Lagrotte, an employee of Schwartz & Company, plaintiff's property manager, wrote defendant on August 24 and August 30, 1982, complaining about various items defendant was placing outside of its demised premises in various parts of the common area. Lagrotte testified that he inspected the premises on September 28 and although some of the materials had been moved around, the earlier problems continued and defendant's property was still being stored in the center's common area. Lagrotte testified that defendant continued to display merchandise in the common area on the sidewalk in front of defendant's store well into 1983. These allegations are supported by pictorial evidence.

Defendant disputes Lagrotte's testimony and claims that the default was cured within thirty days after receiving the letter from plaintiff's attorney. Defendant points to Lagrotte's testimony that eventually defendant rectified the conditions about which plaintiff had complained. Lagrotte, however, only testified that the problems were taken care of before he left plaintiff's employment. This does not contradict his testimony that merchandise continued to be stored in common areas well into 1983. Defendant also points to an internal memorandum written by Lagrotte which states that defendant had "removed all extraneous materials from the exterior of the fenced in area of their rental space," and to letters written by Lagrotte on September 13 and 29, 1982, which complain about defendant's trash being spread around the parking lot, but do not mention merchandise being stored in the common area. None of this evidence, however, contradicts Lagrotte's testimony that on September 28, 1982, materials were still being stored in the common area. His memorandum is consistent with his testimony that material was being moved from "point to point", but still remained in the common area. His letters are also consistent with his testimony that he did not repeat every violation in every letter, even if they had not been cured by the defendant.

Although I could not observe Lagrotte's demeanor, he had no incentive to lie since he was no longer working for plaintiff and had moved to Florida. Defendant has also failed to cite any direct evidence that its property was no longer being placed in the center's common area after September 16, 1982, the last day defendant had to cure its default.

Before a landlord may declare a forfeiture of a lease, it must satisfy the following criteria: (1) the right to declare a forfeiture must be clear; (2) the proof of the happening of the event on which the right is to be exercised must be clear; (3) the party entitled to do so must exercise his right promptly; and (4) the result of en-

forcing the forfeiture must not be unconscionable. *Cleveland v. Salwen,* 292 Pa. 427, 141 A. 155 (1928).

Although "[f]orfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the ... parties ..., a bill to set aside a forfeiture of a lease is addressed to the conscience of the court, and is granted only as a matter of grace." *Blue Ridge Metal Manufacturing Co. v. National Pennsylvania Power Co.,* 327 Pa. 424, 428, 194 A. 559 (1937). The burden is on the party opposing forfeiture to show that "fair dealing and good conscience" require the "intervention of equity to relieve it from the strict enforcement of the terms of the lease." *Id.*

The right to declare a forfeiture was clearly reserved in the lease. Although some of the letters written by plaintiff were ambiguous as to whether it considered defendant in default, the August 17 letter unambiguously stated that defendant was in default and that plaintiff considered the lease terminated.

Defendant argues that since the lease did not specifically state that the tenant covenanted to keep the common area unobstructed for pedestrian traffic and the parking of automobiles, only the landlord had an obligation to keep the area clear. Defendant points to other sections of the lease where the tenant explicitly "covenanted" to perform or refrain from certain acts and claims that when the parties wished to bind the tenant, the tenant would explicitly "covenant."

Defendant's argument, however, proves too much. The lease also contains sections in which the landlord explicitly covenants to perform certain acts. According to the logic of defendant's argument, neither the landlord nor the tenant was responsible for keeping the common areas unobstructed since neither party explicitly covenanted to do so. This would be absurd. A more rational reading of the lease is that defend-

ant agreed not to block sidewalks and parking spaces with its property.

The absurdity of defendant's position is also suggested by other sections of the lease. The lease states that any breach by the landlord entitles the tenant to terminate the lease after giving notice and a reasonable time to cure, regardless of whether damages would make the tenant whole. If, as defendant argues, only the landlord was responsible for keeping the common areas unobstructed, then the tenant could terminate the lease on the basis of the landlord's failure to remove obstructions created by the tenant. Although equity would never permit such a result, I am loathe to think that the parties would agree to terms with such an absurd meaning.[1]

The evidence is clear that defendant obstructed the center's sidewalk and parking lot with its property, and that the defendant did not cure its default within thirty days of the August 17 letter. Nothing in the record suggests that plaintiff did not exercise its right to terminate promptly or that defendant was prejudiced by plaintiff's willingness to give it more than thirty days to cure the problem.

Enforcing this forfeiture is not unconscionable. The sections of the lease at issue in this controversy were all drafted by defendant, and there is nothing unconscionable about strictly holding defendant to the terms of its agreement. Defendant is a major corporation with approximately 350 retail stores and clearly had the economic clout to avoid an unconscionable agreement with the owners of a small shopping center. Moreover, there is no evidence of trickery or bad faith on plaintiff's part. Defendant was repeatedly asked to remove its property from the common area and repeatedly failed to do so. There is no evidence that any uncontrollable circumstances prevented defendant from complying with the lease. Defendant simply chose to ignore the terms of its

1. The fact that the landlord agreed in another section of the lease to keep the common areas clean, well lighted, in good repair and free from snow and ice, has no bearing on defendant's obligation not to obstruct common areas with its property.

agreement and the numerous complaints it received from its landlord.

Equity will not relieve a wrongdoer from a forfeiture simply because it causes a loss to the wrongdoer far greater than the harm suffered by the innocent party invoking an agreement's forfeiture provision.[2] Defendant has not met its burden of showing that "fair dealing and good conscience" require the intervention of equity to relieve it from the terms of a lease it drafted and willfully chose to breach.

An appropriate order follows.

---

**2.** Contrary to defendant's assertion, the fact that the harm suffered by plaintiff cannot easily be translated into monetary damages supports my decision not to invoke my equitable jurisdiction in order to relieve defendant from the terms of an agreement it drafted and repeatedly violated after numerous requests to correct its behavior. Courts are more willing to relieve a party from a lease's forfeiture provision when monetary damages are adequate to make the victim of a breach whole. *See, e.g., Bethlehem Steel Corp. v. Shonk Land Co.,* 169 W.Va. 310, 288 S.E.2d 139, 143 (1982); *Loyalty Dev. Co., Ltd. v. Wholesale Motors,* 61 Hawaii 483, 605 P.2d 925, 929–30 (1980). When it is difficult to calculate what level of monetary damages will make an innocent party whole, the burden upon a breaching party requesting relief from a forfeiture is greater because of the risk that the victim invoking a lease's forfeiture provision will be left without an adequate remedy at law. Defendant's willful wrongdoing makes it impossible for defendant to meet this heavy burden.