202 MARKETPLACE

v.

EVANS PRODUCTS CO.

v.

HEALEY, William J., Healey, Robert T. and 202 Marketplace Corp., Trading as 202 Marketplace Evans Products Company, Appellants in No. 86–1581.

202 MARKETPLACE, Appellant in No. 86–1620,

v.

HEALEY, William J., Healey, Robert T. and 202 Marketplace Corp., Trading as 202 Marketplace.

Nos. 86–1581, 86–1620.

United States Court of Appeals, Third Circuit.

Argued May 15, 1987.

Decided Aug. 14, 1987.

George E. Lieberman (argued), Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant.

Albert N. Sardella (argued), Anthony L.V. Picciotti, P.C., West Chester, Pa., for appellee.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and McCUNE, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this diversity action pursuant to 28 U.S.C. § 1332, the defendant tenant, Evans Products, appeals from a district court order declaring Evans Products to be in default in certain lease covenants and declaring the consequential right of the plaintiff landlord, 202 Marketplace, to terminate the lease. In a cross appeal, 202 Marketplace challenges the district court's entry of summary judgment against it on a count alleging an oral surrender by Evans Products of the leasehold interest.

We agree that the Pennsylvania Statute of Frauds prohibits an oral surrender under the circumstances of this case. However, we also find that 202 Marketplace failed to meet its burden to establish a default justifying a declaration of forfeiture. Therefore we will affirm summary judgment for Evans Products on Count I and we will reverse the declaratory judgment for 202 Marketplace on Count II.

* Honorable Barron P. McCune of the United States Court for the Western District of Pennsylvania, sitting by designation.

### I.

Evans Products Co., a Delaware corporation with its principal place of business in Oregon, leased a storeroom and an outside sales area in a shopping center in Montgomery County, Pennsylvania from the predecessor of 202 Marketplace, a New Jersey corporation with principal places of business in states other than Oregon and Delaware. Evans Products—which is principally engaged in the sale of lumber, hardware, storage sheds, and heating and plumbing supplies—established one of its retail stores at the shopping center under the name "Grossman's".

The lease, dated October 18, 1977, was drafted by Evans Products and incorporated another document entitled "lease agreement". The lease gives Evans Products a 30–year leasehold interest with no increase in rent consisting of six successive five year terms which continue automatically unless Evans Products gives proper notice of its intention to terminate. Neither the lease nor the lease agreement provides for any specific form of notice of the intention to terminate the lease. The lease also provides that 202 Marketplace may regain possession of the demised premises if Evans Products defaults in any of its covenants.

Robert T. Healey is a partner in 202 Marketplace. Joseph B. Schwartz & Co., Inc. is a real estate agent and independent property manager for 202 Marketplace. During the period from May 12, 1982 to August 12, 1982 both Joseph Schwartz and Healey directed letters to personnel at the Grossman's Lumber Store in Montgomeryville, Pennsylvania complaining of the use of areas outside the demised premises for storage of Grossman's products and of the tenant's failure to maintain the outside area free of trash and debris.

In late June, 1982, Robert J. Hertel, assistant secretary and real estate negotiator for Evans Products, contacted Joseph B.

Schwartz & Co.'s office in Montgomery-ville, Pennsylvania to propose certain changes to the existing lease arrangement. Joseph B. Schwartz & Co. requested a written proposal, and upon receipt of one dated June 30, 1982, forwarded it to Healey at his office in Haddonfield, New Jersey. Healey thereafter contacted Hertel by telephone and advised him that 202 Marketplace would not agree to the proposed changes. Hertel orally advised Healey that Evans Products might terminate the lease unless its proposals were accepted. On July 21, 1982, Hertel telephoned Healey and when Healey again rejected the proposed modifications, Hertel reaffirmed Evans Products' intention to terminate the lease. Notwithstanding the conversation between Hertel and Healey, by letter of July 28, 1982, Hertel notified Joseph Schwartz that Evans Products intended to renew the lease for the five year period commencing November 1, 1982.

By letter of August 17, 1982, counsel for 202 Marketplace notified counsel for Evans Products that 202 Marketplace considered the lease to be terminated at the conclusion of the term on October 31, 1982 as a result of the telephone conversation between Healey and Hertel on July 21. Counsel for 202 Marketplace characterized Hertel's July 28 letter as an ineffective attempt to withdraw the termination of the lease. The August 17th letter alternatively notified Evans Products of 202 Marketplace's election to terminate the lease because Evans Products had allegedly breached it by improperly maintaining the exterior, using areas of the premises exceeding the lease and allowing trash and other material and debris to accumulate in areas where it was not permitted.

On October 21, 1982 202 Marketplace filed this action seeking a declaration of its right to terminate the lease. Count I alleged an oral surrender of the leasehold by Evans Products and Count II alleged the plaintiff's right to declare a forfeiture because of Evans Products' breach of lease covenants by improperly maintaining the exterior of the demised premises, improperly using areas outside the demised premises, allowing trash and debris to accumulate, and advertising in ways prohibited by the lease. Evans Products counterclaimed for a declaration that it had effectively exercised its option to renew the lease.

The district court granted summary judgment for Evans Products on the first count, on the theory that the Pennsylvania statute of frauds requires surrender of a leasehold interest of greater than three years to be in writing. A bench trial on the issue of default, by agreement of the parties, was based solely on consideration of documentary evidence. The district court found that Evans Products had covenanted not to obstruct the common areas of the shopping center, *i.e.*, sidewalks and parking areas. The court found that Evans Products had defaulted in that covenant by storing its merchandise in the common areas. Because the district court found the improper use of undemised areas to be dispositive, it made no findings regarding the other three allegations of default.

The district court made the following findings with respect to the plaintiff's claims. The court found that, by letter of August 17, 1982, 202 Marketplace had given adequate notice that it considered Evans Products to be in default and considered the lease terminated. The default continued for 30 days after notice by 202 Marketplace as required by the lease, and therefore Evans Products failed to effect a timely cure. The right of 202 Marketplace to declare a forfeiture and regain possession of the demised premises was clearly reserved in the lease, and Evans Products failed to meet its burden to show that upholding the forfeiture would be unconscionable. Accordingly, the district court entered an order declaring a default by Evans Products and 202 Marketplace's right to declare a forfeiture. This appeal followed.

## II.

On appeal Evans Products argues principally that 202 Marketplace failed to satisfy its burden of proof that Evans Products covenanted to keep the common area free of obstruction by its property and that even if such a covenant exists, 202 Marketplace has failed to show that Evans Products was in default. Because we agree that there was no such covenant, we need not reach the appellant's further arguments regarding absence or insubstantiality of the alleged breach, deficient notice, cure and the unconscionability of declaring a forfeiture.[1]

In its cross-appeal, 202 Marketplace argues that the district court erred in granting summary judgment for Evans Products on the issue of oral surrender under the Pennsylvania Statute of Frauds. The parties do not dispute that Pennsylvania law supplies the rule of decision. We will discuss in turn each of the parties' arguments.

## A.

Under Pennsylvania law the following criteria determine when a landlord may properly declare a forfeiture.

Before a landlord may declare a forfeiture of a lease, however, it must prove the existence of each of the following criteria: (1) that the right to declare a forfeiture was distinctly reserved; (2) that the proof of the happening of the event upon which the right is to be exercised is clear; (3) that the party entitled to do so exercised his right promptly; and (4) that the result of enforcing the forfeiture is not unconscionable.

*Cleveland v. Salwen,* 292 Pa. 427, 431, 141 A. 155, 156 (1928).

It is undisputed that the right to declare a forfeiture is clearly reserved in the lease. Paragraph 9 of the lease agreement provides that "if Tenant shall default in any of the covenants herein contained, and should such default continue for 30 days after receipt by Tenant of written notice thereof, it shall be lawful for landlord to re-enter the demised premises and again have and enjoy the same." The appellant, Evans Products, argues that 202 Marketplace has failed to prove the happening of an event upon which the right to declare a forfeiture is to be exercised, *i.e.,* that Evans Products was in default of any covenant of the lease.

The appellee, 202 Marketplace, asserts that it proved by clear and convincing evidence that Evans Products had promised the following and defaulted on one or more of those promises: (1) not to use the common areas for the storage and display of its merchandise, (2) to properly maintain the exterior of the premises, (3) not to allow trash and debris to accumulate except where permitted under the lease, and (4) not to advertise in specified areas of the shopping center.

Evans Products argues that it did not *covenant* to keep the common areas free of obstruction by its property, as held by the district court, nor to engage in or refrain from any of the other activities complained of by 202 Marketplace. It asserts, therefore, that none of its allegedly improper activities can provide the basis for declaring a forfeiture of the leasehold interest.

 We agree with the appellant that breach of a covenant is required before the landlord may invoke the forfeiture clause under the lease. We turn first to the question of whether the assertedly implicit cove-

---

1. The appellee also asserts that a landlord may control the tenant's business operation by lease, and that a tenant will be held to his covenants for the use of the demised premises. This argument is irrelevant because the controversy at bar centers on the assertedly improper use of the *un* demised common areas.

The appellee's argument that the landlord may reenter and declare a forfeiture for creation of a nuisance on the demised premises is also irrelevant for the reason that the controversy centers on the use of the undemised areas.

nant relied upon by the district court may provide the basis for a forfeiture.

The appellee argues that because the lease delineates the uses of the common areas as well as the uses to which the tenant may put the demised premises, we should imply a covenant on the part of Evans Products not to use the common areas for those purposes expressly reserved to the demised area.[2] The argument continues specifically that since Paragraph 27 of the lease agreement provides that "the tenant may use the demised premises for the inside and outside storage and sale of lumber, building materials and plumbing, heating and electrical supplies and equipment", Evans Products has tacitly promised not to use the common areas for these purposes.

■ The language relied upon by the appellee and the district court as the basis for implying a covenant is contained entirely in the granting portions of the lease. It is language which creates in the tenant a property interest and the right to use the demised premises in specified ways. We do not believe that the rule of construction in Pennsylvania permits the conversion of a demise into a covenant by negative inference in order to sustain a forfeiture. "Forfeitures are odious in law, and are enforced only when there is the clearest evidence that that was what was meant by the stipulations of the parties." *Cleveland v. Salwen,* 292 Pa. at 433, 141 A. at 157. If the tenant was making unauthorized use of the common area, the landlord's remedy was to sue for trespass damages or injunctive relief.

■ The foregoing analysis applies equally to the appellee's assertions of default in covenants governing trash accumulation and maintenance of the exterior of the demised premises. To support these claims, the appellee relies on the same granting portions of the lease and the process of negative inference which we have already rejected. Consequently those arguments cannot sustain the judgment of the district court. The appellee's claim that Evans Products has advertised in a manner violative of a lease covenant must fail for the same reason.

202 Marketplace asserts that it is entitled to declare a forfeiture of the lease because

**2.** The lease provides in pertinent part:

> For and in consideration of a rental of One Dollar and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Landlord does hereby lease and demise unto Tenant, upon and subject to each of the covenants and undertakings hereinafter set forth as well as each and every covenant, agreement, and undertaking set forth in a certain lease agreement between Landlord and Tenant and bearing even date herewith ..., (specified premises in the shopping center).... together with the right, privilege and easement to use, in common with other tenants, all of the Shopping Center not occupied by store buildings (illegible addition in the margin), or shown on the plot plan to be delivery or loading area. Tenant shall have uninterrupted access to its loading area and docks at all times. Such parts of the shopping center as are not covered by store buildings or demised to tenant according to the attached plot plan shall be called the "common area". The common area shall be maintained for unobstructed pedestrian traffic and for the parking of auto-
>
> mobiles and other passenger vehicles of the tenant and all persons trading with or doing business with tenant and other occupants of premises located in the said shopping center. (Lines 5–28).
>
> The lease agreement provides:
>
> All that portion of the tract of land not covered by buildings or demised to tenant is to be common area for the joint use of all tenants, customers, invitees, and employees. (¶ 3, Lines 56–58).
>
> \* \* \* \* \* \*
>
> Tenant may use the demised premises for the sale of lumber and wood goods, building materials, paint and items related or incidental to home improvement, including but not limited to hardware, plumbing, heating and electrical supplies and equipment, or for any other lawful use not conflicting with exclusive rights granted to other tenants of the shopping center. Landlord shall, at any time tenant may request, supply to tenant copies from leases to other tenants of all clauses granting exclusive rights to conduct various businesses in the shopping center. (¶ 10, Lines 120–126).

Evans Products "advertised" by painting the exterior of the demised premises in large white and orange stripes. The language claimed to effectuate a covenant is paragraph 14 of the lease agreement which reads as follows:

> Landlord agrees that it will not use or permit to be used for advertising purposes any part of the Shopping Center, but it will permit Tenant and other occupants thereof to place their names or signs on the exterior of their respective portions of such Shopping Center; provided that such signs are harmonious in size and style. Landlord will not permit occupants of the Shopping Center to paint their names or any advertisement directly on any part of the buildings of the Shopping Center....

This language does not constitute a covenant by Evans Products to refrain from painting the exterior of the building. It contains an express promise by the landlord for the benefit of all the tenants and, as such, would require us to derive an implied promise on the part of the appellant. We cannot sustain a forfeiture on the basis of an implied covenant.

In accordance with the foregoing, the district court's order of August 21, 1986, 642 F.Supp. 874, entering judgment in favor of 202 Marketplace and declaring the right of the plaintiff to terminate its lease with the defendant, will be reversed.

### B.

We now consider the argument of the cross-appellant, 202 Marketplace that the district court erred in granting summary judgment against it on Count I of its complaint alleging an oral surrender of the lease. The district court rested its ruling in favor of the defendant on the theory that the Pennsylvania statute of frauds bars oral notice of the termination of a written lease.[3] The plaintiff, 202 Marketplace, argues that because the lease fails to specify that notice of the tenant's intention not to renew the lease must be in writing, the statute of frauds, barring oral notice of termination, is inapplicable.[4]

The cross-appellant relies exclusively upon *McClelland v. Rush*, 150 Pa. 57, 24 A. 354 (1892) to support its argument. In *McClelland*, a lease for a term of five years gave the lessee the privilege of an extension "by notice in writing" for a further period of five years upon the same terms already provided by the existing lease. The defendant tenant had introduced considerable evidence that he had notified the landlord orally that he elected to extend the lease and that the landlord had assented to the extension and given him to understand that no further notice was necessary. The trial court had directed a verdict for the plaintiff landlord on the theory that the statute of frauds required the extension to be in writing. The Pennsylvania Supreme Court reversed, holding that the case should have gone to the jury on the question of whether the landlord had waived her contractual right to written notice. The court observed that the statute of frauds was inapplicable because the landlord had already granted the leasehold

---

3. The statute of frauds reads as follows:
 No lease of any real property made or created for a term of more than three years shall be assigned, granted or surrendered except in writing signed by the party assigning, granting or surrendering the same or his agent, unless such assigning, granting or surrendering shall result from operation of law. 68 Pa.C.S.A. § 250.203.

4. The lease provides in pertinent part:
 Tenant shall be entitled to six (6) successive renewals hereof, each for a term of five (5)

years, upon the same terms and conditions as herein set forth, except as to term and number of renewals, and unless tenant shall notify landlord not less than 90 days prior to the expiration of the original term, or of any renewal thereof, of its intention to terminate this lease, it shall be deemed to have exercised its option to avail itself of such renewal term. In the event tenant should give notice of its intention not to exercise its right to renew this lease, all succeeding renewals shall thereupon terminate. (Lines 35–44).

interest in writing and no further action on the part of the landlord was required to create the new term or define its conditions.

*McClelland* lends no support to the landlord's argument that because the lease does not specify written notice the tenant may not raise the statute of frauds in defense against a declaration of surrender. In *McClelland* the landlord was asserting a contract right to written notice of renewal and apparently attempting to raise the statute of frauds in defense against an asserted waiver of that right. There was no issue of an oral or contractual waiver of a *statutory* protection, merely of a contractual one. The writing by the landlord which the statute of frauds required was already in evidence. The statute provided no defense against having granted the leasehold interest and was irrelevant to the issue of the waiver of the contractual right to notice.

In the case before us, as in *McClelland,* the granting of the leasehold interest has already been accomplished in writing by the landlord. No further action on the part of the landlord is required to create a new term or define its conditions. There ends the similarity between the cases. Here, it is the tenant who raises the statute of frauds in defense. In *McClelland,* further action on the part of the tenant was required to create a new term. In the lease for six terms of five years at issue here, the lessee has the privilege of cancellation at the end of each term upon 90 days prior notice of the intention to terminate the lease. Renewal of the leasehold is automatic absent notice of nonrenewal by the tenant. Here, in contrast to *McClelland,* the landlord is asserting a contract requirement only of oral notice. Nevertheless, while the landlord may have a *contract* right merely to oral notice of termination, the tenant has a *statutory* right to avoid a judicial declaration of surrender except upon the proffer of a writing signed by the tenant.

Even though a lease may not specify a writing, the statute of frauds requires evidence in writing, when a party is to be charged with "assigning, granting or surrendering" an estate in real property. The statute of frauds protects a grantor asserted to have created a leasehold interest, but it also protects a tenant asserted to have surrendered one. We will not presume that failure of the lease to specify the landlord's right to written notice constitutes a waiver of the tenant's right to raise the statute of frauds as an affirmative defense to a charge of surrender. Furthermore, while a landlord may waive his *own* right to written notice of renewal as in *McClellan,* the landlord may not eliminate the tenant's statutory protection by purporting to accept an asserted oral surrender.

The district court correctly found that the statute of frauds requires that an asserted surrender be evidenced by a writing signed by the tenant. Since no such writing is in evidence, we will affirm the district court's order of September 19, 1984, 593 F.Supp. 1133, granting summary judgment for the defendant, Evans Products, on Count I of the complaint.