Rodríguez Font Realty Corporation, demandante y recurrida, *v.* J. Gus Lallande, Inc., demandado y recurrente.

*Número:* 508      *Resuelto:* 15 de febrero de 1963

*Brown, Newsom & Córdova,* abogados del recurrente; *Félix Ochoteco, Jr.,* abogado de la recurrida.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

"El término del presente contrato de arrendamiento es el de tres (3) años, con efecto retroactivo su comienzo al primero de abril del año en curso [1956], y por tanto, a vencer el treinta y uno de marzo de mil novecientos cincuenta y nueve, prorrogable dicho término a tres (3) años más, a opción exclusiva de la arrendataria, pero viniendo ésta obligada, como condiciones para poder hacer uso de dicha prórroga, haber cumplido fielmente con todo lo pactado en el presente contrato; y, en segundo término, a notificarle por correo certificado a la arrendadora, y por lo menos con cuatro (4) meses de anticipación al vencimiento de dicho término original de tres años, de que la arrendataria va a hacer uso de la citada prórroga, pactándose, en su consecuencia, que la ausencia de dicha notificación dentro del término antes referido, privará definitivamente a la arrendataria de su derecho a disfrutar de tal prórroga", reza la cláusula de la escritura de arrendamiento otorgada por la deman-

dante recurrida Rodríguez Font Realty Corporation, como arrendadora, y la demandada recurrente J. Gus Lallande, Inc., como arrendataria, cuya interpretación y aplicación dio margen al pleito sobre sentencia declaratoria, dentro del cual ambas partes solicitaron oportunamente que se dictara sentencia sumaria.(¹)

La primera planta y parte de la segunda planta de un edificio sito en el número uno de la Calle General Gamba, del sector de la Marina, en San Juan, fueron los locales objeto de arrendamiento, que se destinaron por la arrendataria para su negocio de almacenar, empacar y distribuir arroz "Sello Rojo" de la Rice Growers Association of California, habiendo para ello instalado la maquinaria y equipo necesario. El canon mensual estipulado fue de $1,175, pagadero por mensualidades vencidas, durante el término del contrato; pero en caso de que la arrendataria hiciera uso de la prórroga convenida por tres años adicionales dicho canon se aumentaría a $1,300 mensuales.

Disfrutó la arrendataria de los locales arrendados hasta el 31 de marzo de 1959, fecha de expiración del término de duración establecido, y permaneció ocupándolos después de dicha fecha sin que notificara en la forma y dentro del término provisto por las partes de su intención de ejercitar la opción exclusiva de prórroga a su favor que contractualmente se estipuló—mediante comunicación cursada por correo certificado, por lo menos con cuatro meses de antelación al término de tres años. Sin embargo, al transcurrir el mes de abril de 1959, la arrendataria remitió un cheque a la arrendadora por la suma de $1,175, expresándose como concepto en el com-

---

(¹) Conforme a la Regla 59 de las de Procedimiento Civil de 1958, 32 L.P.R.A., Supl. 1961, pág. 187, el procedimiento para obtener una sentencia declaratoria se rige por dichas reglas. Véanse, *Asociación de Distribuidores* v. *Admón. Estabilización,* 81 D.P.R. 212 (1959); *Colón* v. *San Patricio Corporation,* 81 D.P.R. 242 (1959); *Llopiz* v. *Arburúa,* 72 D.P.R. 531 (1951); *Cristy* v. *Malavé,* 70 D.P.R. 524 (1949), resueltos bajo la anterior Regla 57 de las de Enjuiciamiento Civil de 1943, similar en su redacción a la actual Regla 59.

probante de pago adherido al mismo el de que era por "Renta Almacén General Gamba", pero, según aparece de la propia declaración del Presidente de la arrendataria recurrente que se unió al escrito de oposición a la solicitud de sentencia sumaria (T.A., pág. 55), la arrendadora "inmediatamente lo devolvió insistiendo en que el canon fuese $1,300; y la corporación demandada, accediendo a lo exigido por la corporación demandante, volvió a enviar el referido cheque de $1,175 y otro cheque más por $125, y después continuó pagando un canon total de $1,300 por mes." En el comprobante de pago del cheque por $125 se consignó como concepto la frase "Balance renta almacén General Gamba."([2]) No es hasta el día 16 de octubre de 1959 que la arrendataria —confirmando una conversación de dos días antes—notificó por escrito a la arrendadora su propósito de desocupar los locales el último día de febrero de 1960.([3]) La recurrente desalojó los locales en 30 de marzo de 1960.

Una leve discrepancia surge en cuanto a si la arrendadora tuvo conocimiento previo de la intención de la arrendataria de trasladar su explotación industrial y comercial a los molinos que su representada construia en las inmediaciones del pueblo de Cataño. No obstante, podemos asegurar

---

([2]) En la página 4 de su alegato la parte recurrente explica que accedió a tal insistencia "porque no quería que la arrendadora notificara la terminación del arrendamiento de mes en mes." Aunque plausible, esta explicación no encuentra apoyo en ninguna de las declaraciones o contra-declaraciones que se unieron a las solicitudes de sentencia sumaria, y por tanto, no podemos considerarla como un hecho establecido a los fines de resolver el presente recurso. Véase, sin embargo, la discusión posterior a las páginas 11 y 12 de esta opinión, sobre el efecto del Art. 12 de la Ley de Alquileres Razonables.

([3]) El texto de dicha comunicación lee:

"Me refiero a la conversación que el que suscribe sostuvo con usted [sic] en relación a los locales que actualmente ocupamos en la calle General Gamba, y pasamos a informarles que vamos a desocupar los mismos el día último de febrero del 1960, fecha en la cual vamos a mudarnos a los Molinos nuestros.

"En caso de que interinamente surja alguna dificultad que nos obligue a quedarnos un mes más en dichos almacenes, procederemos a notificarlo inmediatamente."

que no existe conflicto sobre que la Rice Growers Association of California comenzó a hacer gestiones en enero de 1958 para establecer un molino y almacén en Puerto Rico para elaborar arroz descascarado que se traería a granel desde dicho estado, almacenarlo y empacarlo; que en 16 de octubre siguiente obtuvo una exención contributiva bajo la Ley de Incentivo Industrial de Puerto Rico de 1954 (Ley Núm. 6 de 15 de diciembre de 1953, 13 L.P.R.A. sec. 241 *et seq.*); que en diciembre del mismo año hizo arreglos con la Compañía de Fomento Industrial para la adquisición de un área en el frente industrial portuario de Guaynabo-Cataño, y durante los primeros meses del año 1959 comenzó la construcción del molino y demás facilidades; que estos hechos fueron difundidos en forma amplia por la prensa local. Además, la corporación demandante "aunque tenía conocimiento por su presidente, que la demandada o una tercera firma, se encontraba construyendo un molino para ser utilizado por la demandada en su negocio de arroz, no fue informada por la demandada sino verbalmente allá para el 14 de octubre de 1959, y por escrito el 16 de octubre de 1959, que se disponía la arrendataria desocupar los citados locales y hacerle entrega de los mismos a la demandante, estando en todo momento . . . bajo la impresión que la demandada o bien utilizaría los locales de referencia como almacén de ellos en San Juan, o que los arrendaría hasta la terminación de dichos contratos . . ."[4]   Hasta aquí los hechos que es necesario considerar para resolver la controversia surgida entre las partes sobre la duración de sus relaciones arrendaticias.

La posición de la corporación arrendadora es que el arrendamiento quedó prorrogado sin necesidad de la notifi-

---

[4] En virtud de la cláusula 8(n) de los contratos de arrendamiento, a la arrendataria le estaba prohibido ceder en todo o en parte su derecho de arrendamiento, o subarrendar los locales cedídosle, excepto a alguna organización filial de dicha arrendataria o cuando el cesionario o subarrendatario fuere el señor J. Gus Lallande, sus hijos o sus herederos.

cación que venía obligada a hacer la arrendataria al continuar ésta ocupando los locales arrendados luego del vencimiento del término original y al satisfacer el canon mayor convenido para el caso de prórroga; la arrendataria aduce que al vencer el término convenido surgió entre las partes un contrato de mes a mes por tácita reconducción al ella permanecer disfrutando quince días del inmueble arrendado, con la aquiescencia de la arrendadora y sin que mediara el requerimiento a que se refiere el Art. 1456 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 4063.(5) En una bien razonada opinión el tribunal de instancia sostuvo la posición sustentada por la arrendadora.

Analizado debidamente el pacto que denominaremos "opción de prórroga", podrá observarse que el mismo contiene una cláusula para beneficio de la arrendataria que le garantiza la permanencia en la ocupación del inmueble arrendado por un período adicional de tres años sin que notificación

---

(5) "Si al terminar el contrato permanece el arrendatario disfrutando quince días de la cosa arrendada con aquiescencia del arrendador, se entiende que hay tácita reconducción por el tiempo que establecen los Arts. 1467 y 1471, a menos que haya precedido requerimiento."

Se ha indicado que como la reconducción nunca es prórroga del contrato vigente, sino uno nuevo, aunque tenga en el anterior su fundamento, cabe definir la tácita reconducción como "aquel contrato de arrendamiento de un fundo, que la ley supone concertado a base de otro preexistente que entiende renovado, por la inactividad del arrendador que se abstuvo de requerir al arrendatario antes de finalizar el plazo contractual, sin de otro lado notificarle su oposición a la continuidad realizada durante cierto tiempo, expresamente concretado por el legislador" (Moreno Mocholi, La "Tácita Reconducción" en la Nueva Ordenación de los Arrendamientos de Fincas Rústicas, Revista General de Legislación y Jurisprudencia, Tomo 178, pág. 581 (1945). Se justifica por el beneficio que representa la continuidad de la explotación de los predios agrícolas y como una garantía adicional de la estabilidad del arrendatario. De Casso y Cervera, en su Diccionario de Derecho Privado (1954), pág. 3757, señalan la concurrencia de los siguientes requisitos para la existencia de la tácita reconducción: 1) que las partes hayan estado vinculadas contractualmente; 2) que el arrendamiento primitivo haya expirado, véase, Torres v. Biaggi, 72 D.P.R. 869 (1951); 3) que el arrendatario continúe en el disfrute del inmueble arrendado por quince días; (4) que esta permanencia lo sea con la aquiescencia del arrendador, Cfr. Besosa v. Tribunal de .Distrito, 68 D.P.R. 32 (1948); Rodríguez v. Bosch Her-

alguna de la arrendadora le impida este disfrute, aplíquense bien las disposiciones del Art. 1456 en relación con. el 1471 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 4063 y 4092, (⁶) relativas al requerimiento para impedir la continuación de la relación arrendaticia por tácita reconducción, o las disposiciones del Art. 12 de la Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946, 17 L.P.R.A. sec. 192, (⁷) sobre la prórroga obligatoria del contrato de arrendamiento llegado el día del vencimiento convenido, sujeta ésta a las excepciones del Art. 12-A de dicha ley, 17 L.P.R.A. sec. 193. Bajo cualquiera de los preceptos citados la arrendadora renunciaba a recobrar la posesión del inmueble por el término de tres años. Ahora bien, la cláusula referente al aviso que la arrendataria se obligaba a cursar sobre su intención de hacer uso de la opción concedida aprovecha a la arrendadora "en contemplación a la futura disposición del local," como acertadamente señala el tribunal

---

manos, 32 D.P.R. 602 (1923); *Toro* v. *Pizá Hermanos*, 30 D.P.R. 73 (1922); *Puig* v. *Soto*, 18 D.P.R. 132 (1912); y, 5) que no exista pacto que expresa o implícitamente se oponga a la tácita reconducción o que ésta no haya sido prevista en el contrato. En general, véase, *León Parra* v. *Gerardino*, 58 D.P.R. 489 (1941).

Sobre el plazo de la tácita reconducción, véanse, Sentencias del Tribunal Supremo de España de 29 de septiembre de 1896 (Jurisp. Civil, t. 80, pág. 228); 12 de octubre de 1900 (Jurisp. Civil, t. 90, pág. 441); y 20 de noviembre de 1909 (Jurisp. Civil, t. 116 pág. 418).

(⁶) "Si no se hubiese fijado plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario.

"En todo caso cesa el arrendamiento, sin necesidad de requerimiento especial cumplido el término."

(⁷) "Sea cual fuere la fecha de su edificación u ocupación y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes. La anterior es aplicable tanto a contratos escritos como a convenios orales y la prórroga se entenderá por los plazos que fija el Art. 1471 del Código Civil, pero nunca por un período mayor que la duración de la emergencia declarada en esta ley. Dicha prórroga es también aplicable a solares dados en arriendo y en los cuales existen edificaciones pertenecientes a dueño distinto al del solar."

a quo. Cfr. Sentencia del Tribunal Supremo de España, Sala de lo Social, de 18 de septiembre de 1941 (Aranzadi, *Repertorio de Jurisprudencia*, t. VIII, pág. 617).

Se deduce que si el requisito de notificación escrita por el arrendatario con suficiente anticipación de su intención de extender el término del contrato mediante el ejercicio de una opción de prórroga convenida en el contrato primitivo es para beneficio de la parte arrendadora, ésta puede renunciar a su cumplimiento. *Dickinson* v. *Robinson*, 272 Fed. 77 (C.C.A. 4, 1921); *Wolf* v. *Tastee Freeze Corp.*, 109 N.W.2d 733 (Neb. 1961); *Achtar* v. *Posner*, 56 A.2d 797 (Md. 1948); *Wallworth* v. *Johnson*, 55 A.2d 305 (N.J. 1947); *Straus* v. *Robbin*, 133 Atl. 868 (N.J. 1926); *McClelland* v. *Rush*, 24 Atl. 354 (Pa. 1892); *Wood* v. *Edison Electric Illuminating Co.*, 69 N.E. 364 (Mass. 1904); *Fuchs* v. *Peterson*, 146 N.E. 556 (Ill. 1925); *Stone* v. *St. Louis Stamping Co.*, 29 N.E. 623 (Mass. 1892); *McCue* v. *Collins*, 208 S.W.2d 652 (Texas 1948); *Burke* v. *Shafer*, 189 S.W.2d 444 (Texas 1945); *Kaimann* v. *Spivak*, 17 S.W.2d 599 (Mo. 1929); *Khouris Bros.* v. *Jonakin*, 300 S.W. 612 (Ky. 1927); *Dockery* v. *Thorne*, 135 S.W. 593 (Texas 1911); *Flint* v. *Mincoff*, 353 P.2d 340 (Mont. 1960); *Ketcham* v. *Oil Field Supply Co.*, 226 Pac. 93 (Okla. 1923); Rasch, *Landlord and Tenant and Summary Proceedings* (Baker, Voorhis & Co., 1950, § 211. Cfr. Sentencia del Tribunal Supremo de España de 2 de enero de 1891 (Jurisp. Civil, t. 69, pág. 5). En otras palabras, la omisión del arrendatario de hacer la notificación en la forma provista y en tiempo hábil puede servir de escudo al arrendador para negar la vigencia de la relación contractual, *Wolf* v. *Tastee Freeze Corp.*, 109 N.W.2d 733 (Neb. 1961); *Zeidman* v. *Davis*, 342 S.W.2d 555 (Texas 1961); *McClellan* v. *Ashley*, 104 S.E.2d 55 (Va. 1958); Anotaciones, *Effect of lessee's failure or delay in giving notice within specified time, of intention to renew lease*, 44 A.L.R.2d 1359 (1955) y *Landlord's consent to extension or renewal of lease as shown by acceptance*

*of rent from tenant holding over*, 45 A.L.R.2d 827 (1956); pero no puede utilizarse como lanza en su contra por el arrendatario para eludir su responsabilidad cuando la conducta de éste evidencia que la continuación de su permanencia en el objeto arrendado responde al ejercicio de su derecho de opción.[8] No puede aprovecharse de su propio silencio.

La conducta de la arrendataria recurrente demuestra, a nuestro juicio, que, si bien no remitió la notificación escrita requerida por el contrato por correo certificado y con cuatro meses de antelación a la expiración del vencimiento primitivo, aceptó que su permanencia en el inmueble se fundara en el ejercicio del derecho de prórroga. No puede interpretarse en otra forma su actuación al enviar el complemento para cubrir el canon según aumentado, ante los reclamos de la arrendadora que así se lo exigía. Constituye ello un acatamiento a las disposiciones contractuales. Véanse, *Amézaga* v. *Agudo*, 67 D.P.R. 11 (1937) y *Abarca* v. *Cordero*, 60 D.P.R. 519 (1942). Si esa no era su posición, fácil le hubiese sido insistir en que como su ocupación se fundaba en la tácita reconducción sólo venía obligada a satisfacer el canon estipulado para el término original del contrato. Según indicamos anteriormente, en virtud de las disposiciones de orden público restrictivas de la acción de desahucio contenidas en el Art. 12 de la Ley de Alquileres Razonables, *supra*, llegado el día del vencimiento pactado en el contrato de arrendamiento, la relación arrendaticia se prorroga "obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, *sin alteración de ninguna de sus cláusulas*, todas las cuales se reputarán vigentes", salvo en los casos en que previas las notificaciones requeridas se autoriza al arrendador a "negar la prórroga

---

[8] Para otros temas relacionados con la suficiencia de la notificación del ejercicio de una opción de prórroga de un contrato de arrendamiento, véanse, Anotaciones, *Sufficiency of notice of exercise of option to renew lease*, 51 A.L.R.2d 1404 (1957), 148 A.L.R. 172 (1944), 99 A.L.R. 1010 (1935) y 1 A.L.R. 343 (1919).

del contrato de arrendamiento y en su consecuencia promover la acción de desahucio", conforme a lo dispuesto en el Art. 12-A de la citada ley.[9]

*Tay-Holbrook* v. *Tutt*, 24 P.2d 463 (Cal. 1933), citado en la opinión del tribunal de instancia, presentaba una situación muy similar a la del caso de autos. Las partes convinieron el arrendamiento de un local por cinco años mediante el pago de un canon mensual de $416.66. Se concedió al arrendatario una opción para prorrogar el contrato por cinco años adicionales bajo los mismos términos y condiciones, excepto que la renta se aumentaba a $500 mensuales. Para hacer uso de la prórroga se dispuso que se remitiría una comunicación escrita al arrendador con sesenta días de anticipación al vencimiento del término pactado. Transcurrido el plazo original, el arrendatario continuó en posesión del local arren-

---

[9] Contrario a lo que ocurre actualmente en España, existe una perfecta concordancia entre las disposiciones de la Ley de Alquileres Razonables que imponen la prórroga obligatoria del contrato de arrendamiento y los artículos del Código Civil referentes al tiempo de la tácita reconducción, pues el Art. 12 *in fine, supra,* señala que la prórroga se extenderá por los plazos que fija el Art. 1471 del Código Civil, 31 L.P.R.A. sec. 4092, aunque nunca por un período mayor que el de la duración de la emergencia en relación con el problema de inquilinato.

Salvo contadas excepciones, en España las disposiciones sobre tácita reconducción han quedado inefectivas por haber sido sustituidas por prescripciones especiales de la legislación sobre arrendamientos rústicos y urbanos. Véanse, en cuanto a arrendamientos de predios rústicos, los Arts. 2 y 3 de la Ley de 28 de junio de 1940 (Medina y Marañón, *Leyes Civiles de España,* Instituto Editorial Reus (1958) Tomo 2º, pág. 1105) y el Art. 6 de la Ley de 23 de julio de 1942 (Medina y Marañón, *op. cit.,* pág. 1135); y en cuanto a los arrendamientos urbanos, el Art. 57 de la Ley de 13 de abril de 1956 (Medina y Marañón, *op. cit.,* pág. 1362) y el anterior Art. 70 de la Ley de Arrendamientos Urbanos de 1946, de donde se copió literalmente la primera oración del Art. 12 de nuestra Ley de Alquileres Razonables (García Royo, *Tratado de Arrendamientos Urbanos,* Gráficas Voluntas, Madrid (1948) Vol. II, págs. 9–29). Así lo tiene declarado expresamente la Sala de lo Social del Tribunal Supremo de España en sus sentencias de 26 de marzo de 1953 (Jurisp. Civil, t. 42, pág. 397); 31 de octubre de 1952 (Aranzadi, *Repertorio de Jurisprudencia,* t. XIX, pág. 1598), 7 de febrero de 1946 (Aranzadi, *op. cit.,* t. XIII, pág. 233); 19 de noviembre de 1945 (Aranzadi, *op. cit.,* t. XII, pág. 901); y 23 de junio de 1942 (Aranzadi, *op. cit.* t. IX, pág. 493); Bellon Gómez, *Régimen Legal de los Arrendamientos Urbanos,* Editora Nacional, Madrid (1949), pág. 210.

dado, aunque no envió la notificación previa aludida. Sin embargo, satisfizo los cánones a razón del canon aumentado y en los comprobantes de pago adheridos a los cheques remitidos al arrendador hacía constar como concepto para la expedición el de rentas del local. Después de hacer constar que las partes mediante sus actos habían renunciado a la cláusula del requerimiento de notificación, y especialmente el arrendador para cuyo beneficio se incluyó la misma, se sostuvo que la conducta observada por las partes evidenciaba su intención de prorrogar el contrato mediante el ejercicio de la prórroga, con desatención a los requisitos formales que para ello se habían pactado. La parte recurrente insiste repetidamente en que la situación que consideramos es distinta, pues la arrendadora nunca consintió en la prórroga. Es cierto que no existe constancia expresa de tal hecho, pero precisamente por eso es que hemos tenido que recurrir a un examen de su conducta para determinar su verdadero alcance. Si algún elemento de distinción hay entre ambas situaciones es favorable a la arrendadora, pues mientras en *Tutt* el pago del precio aumentado del arrendamiento se efectuó voluntariamente por el arrendatario desde el primer momento, aquí se hizo ante el requerimiento expreso de la arrendadora que demandó el pago invocando el pacto contractual para el supuesto del ejercicio de la prórroga.

En *Cicinelli* v. *Iwasaki*, 338 P.2d 1005, 1011 (Cal. 1959)., el cesionario de un contrato de arrendamiento y el arrendador convinieron una prórroga de cinco años con un aumento del canon mensual de $740 a $1,040, y se sostuvo que el envío de un cheque por esta última suma daba lugar a la inferencia de que el arrendatario intentaba acogerse a la prórroga y aceptaba pagar la renta mayor, distinguiéndose así de *Colyear* v. *Tobriner*, 62 P.2d 741 (Cal. 1936), en donde, si bien se notificó por el arrendatario el deseo de continuar en la ocupación del inmueble a la expiración del plazo pactado, no se significó la disposición de satisfacer el precio aumentado, sino que se continuó pagando el canon original.

Cfr. *Moiger* v. *Johnson*, 180 F.2d 777 (C.A. D.C. 1950) ; *United States* v. *T. W. Corder, Inc.*, 208 F.2d 411 (C.A. 9, 1953) ; *Donnelly Advertising Corp. of Md.* v. *Flaccomio*, 140 A.2d 165 (Md. 1958) ; *Worthington* v. *Serkes*, 111 A.2d 877 (D.C. 1955).

*Le Blanc* v. *Barielle*, 25 So.2d 638 (La. 1946), en el cual se apoya la parte recurrente, no le favorece ni es aplicable. Se trataba de un contrato de arrendamiento por término de un año con opción a favor del arrendatario de prorrogarlo por tres años adicionales bajo los mismos términos y condiciones que los contenidos en el convenio primitivo—incluyendo el importe de la renta—, siempre que dicho arrendatario construyera mejoras por valor de no menos de $1,500 en el inmueble arrendado. Las mejoras fueron construidas dentro del término original del contrato, pero el arrendatario en forma alguna, oral o escrita, comunicó al arrendador su intención de permanecer en el disfrute, aunque continuó en posesión después del plazo pactado y pagando la renta convenida. Cuando el arrendador inicia acción para recobrar la posesión es que se esgrime por el arrendatario la alegación de que la aceptación de la renta después de la expiración del término original unida a la circunstancia del cumplimiento de la condición sobre la construcción de las mejoras constituia una renovación expresa o implícita del acuerdo contractual por todo el período concertado para el caso de prórroga. El tribunal determinó que, en ausencia de una actuación del arrendatario manifestando positivamente su intención de utilizar la prórroga, el hecho de la continuación en la posesión por éste después de la fecha del vencimiento pactada meramente producía una tácita reconducción, pero no obligaba al arrendador por todo el término de la prórroga. Obsérvese que este caso no es más que una aplicación de que el requisito de notificación para el ejercicio de la prórroga es para beneficio del arrendador, y que el arrendatario no puede imponerle la continuación de la relación arrendaticia si no ha cumplido con los términos sobre la forma de dicha

notificación. Una situación similar ocurrió en *Wieck* v. *Glindmeyer*, 16 S.W.2d 487 (Ky. 1929), también citado por la recurrente, en donde tampoco se trataba de la conducta observada por el arrendatario en relación con un contrato que para el caso del ejercicio de una opción de prórroga requiriera el pago de un canon superior al original.

■ No cometió error el tribunal de instancia al dictar sentencia declarando que la relación arrendaticia entre las partes subsistió hasta el día 31 de marzo de 1962, y que la arrendataria viene obligada al pago de los cánones de arrendamiento hasta esta última fecha. Ahora bien, a primera vista, los locales arrendados dedicados a una empresa comercial e industrial, se encuentran sujetos a la reglamentación vigente sobre inquilinato, Art. 4(a) de la Ley Núm. 464 de 25 de abril de 1946 (17 L.P.R.A. sec. 184(a)). Siendo ello así, no podemos, en ausencia de prueba sobre el particular, determinar la cantidad que deberá satisfacer la arrendataria, especialmente considerando la posibilidad de que el aumento contractual convenido entre las partes esté intervenido por dicha reglamentación. A este respecto, véanse, *United States Trust Co.* v. *Nedab Holding Corp.*, 93 N.Y.S.2d 276 (1949) y *Plessdore Realty Corporation* v. *Fasano*, 69 N.Y.S.2d 435 (1947).

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 21 de abril de 1961.*