FRANK A. DALMAU, demandante y recurrente, *v.* RAFAEL HERNÁNDEZ SALDAÑA y OTRO, demandados y recurridos.

Número: R-74-327    Resuelto: 4 de marzo de 1975

*Brown, Newsom & Córdova* y *Alberto J. Picó González,* abogados del recurrente; *Rúa, Mercado & González,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 14 de abril de 1967 Frank A. Dalmau, aquí demandante recurrente, arrendó, mediante contrato escrito, el segundo piso de un edificio de su propiedad a los demandados recurridos. El término del arrendamiento era de tres años. Comenzaba el 16 de abril de 1967 y expiraba el mismo día y

mes del año 1970. El contrato concedía a los arrendatarios el derecho de opción para prorrogar el arrendamiento por dos períodos de tres años cada uno y disponía que para ejercitar la opción de prórroga los arrendatarios así lo notificarían al arrendador por correo, lo cual supone una notificación por escrito.

Expirado el término del contrato, los arrendatarios continuaron en posesión del inmueble, pagando las mensualidades, pero sin ejercitar la opción de prórroga. En 30 de enero de 1974 el recurrente instó acción de desahucio contra los inquilinos con el objeto de recuperar el inmueble.

La ilustrada Sala sentenciadora declaró sin lugar la demanda por entender que la opción de prórroga se ejercitó por los arrendatarios implícitamente al continuar ellos en posesión del inmueble, pagando el canon y recibiéndolo el arrendador.

Ante nos el recurrente señala dos errores. El primero es en el sentido de que erró el tribunal de instancia al aplicar equivocadamente al caso principios y decisiones del derecho común anglosajón. En el segundo señalamiento apunta que el tribunal erró al entender que era aplicable a este caso lo resuelto en *R. F. Realty Corp.* v. *J. Gus Lallande, Inc.*, 87 D.P.R. 351 (1963). Ambos errores se cometieron. Nos explicamos a continuación.

■ Antes de continuar es conveniente aclarar que por tratarse en el caso de autos de oficinas profesionales y de un canon mensual mayor de $399.99, el inmueble en cuestión no está cubierto por las disposiciones de la Ley de Alquileres Razonables. Art. 4, Ley Núm. 464 de 25 de abril de 1946, según enmendado; 17 L.P.R.A. sec. 184(b) (4). Por eso hay que acudir a nuestro derecho privado básico—supletorio de las leyes especiales cuando las hay—nuestro Código Civil. (1) En

---

(1) Art. 12 del Código Civil, 31 L.P.R.A. sec. 12; *Rosario* v. *Atl. Southern Ins. Co.*, 95 D.P.R. 759, 764 (1968); *Martínez* v. *Llavat*, 86 D.P.R. 235, 247 (1962); *Robles Menéndez* v. *Tribunal Superior*, 85 D.P.R. 665, 670 (1962); *Wood* v. *Tribl. Contribuciones*, 71 D.P.R. 233, 235 (1950).

este caso existen disposiciones de dicho Código que cubren esta materia y las mismas son vinculantes para las partes y para el juez. Sábese también que cuando no hay ley aplicable al caso, el tribunal resolverá conforme a equidad, según la define el Art. 7 del Código Civil, 31 L.P.R.A. sec. 7. No se refiere, desde luego, el Código a la "Equity" anglosajona, sino a la equidad civilista. Castán, *En Torno al Derecho Civil de Puerto Rico*, 26 Rev. Jur. U.P.R. 7 (1956) ; *Silva* v. *Comisión Industrial*, 91 D.P.R. 891, 898–900 (1965) ; *Montilla* v. *Van Syckel*, 8 D.P.R. 160, 194 (1905).[2]

Como dijimos, sobre el problema específico que nos ocupa, nuestro Código Civil contiene disposiciones expresas. Dispone el Código que si el arrendamiento se ha hecho por tiempo determinado—como en el caso de autos—concluye el día prefijado sin necesidad de requerimiento. Art. 1455; 31 L.P.R.A. sec. 4062. También dispone que si al terminar el contrato el arrendatario permanece quince días disfrutando de la cosa arrendada con aquiescencia del arrendador—y pagando el canon, se sobreentiende—hay tácita reconducción. Art. 1456; 31 L.P.R.A. sec. 4063. En cuanto al término de este nuevo contrato que se realiza por acuerdo tácito, el Código tiene disposiciones tanto para el caso de predios rústicos como para el caso de fincas urbanas. En el caso de estas últimas es de aplicación el Art. 1471 (31 L.P.R.A. sec. 4092) por mandato expreso del antes citado Art. 1456. Dicho Art. 1471 lee como sigue:

"Si no se hubiese fijado plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario.

---

[2] Véanse también *Don Quixote Hotel* v. *Tribunal Superior*, 100 D.P.R. 19, 28 (1971) ; *García Colón* v. *Srio. de Hacienda*, 99 D.P.R. 779, 786 (1971) ; Castán, *La Formulación Judicial del Derecho* (1954) ; Friedmann, *Legal Theory*, 5ta. ed. (1967), págs. 543–545; 4ta. ed. (1960), págs. 493–496; Allen, *Law in the Making*, 7ma. ed. (1966), Cap. V; Merryman, *The Civil Law Tradition* (1969), Cap. VIII.

En todo caso cesa el arrendamiento, sin necesidad de requerimiento especial cumplido el término."

■ ¿Quiere esto decir que si el contrato original es por tres años, como en el caso de autos, la reconducción es por otros tres años y así sucesivamente? La respuesta es en la negativa porque es preciso tener presente que la tácita reconducción no constituye una simple prórroga del contrato primitivo, sino un contrato nuevo. Si bien se presume que este nuevo contrato se sujeta a iguales condiciones y a igual canon que el anterior, esta presunción sufre excepciones y la primera de ellas es que el tiempo de duración del nuevo arrendamiento no es el estipulado en el contrato original, sino el que señalan los Arts. 1467—en el caso de predios rústicos—y el 1471 en el caso de fincas urbanas. En este último caso, dicho Art. 1471 dispone que cuando el alquiler es por meses el plazo del nuevo arrendamiento también se entenderá que es por meses.

■ Hemos visto, pues, que para que opere la reconducción tácita deben concurrir tres requisitos. El primero, que al terminar el contrato de arrendamiento permanezca el arrendatario disfrutando por quince días de la cosa arrendada. Segundo, que lo haga con aquiesciencia del arrendador. Tercero, que no haya precedido requerimiento, o sea, expresión hecha por cualquiera de las partes a la otra de su voluntad de dar por terminado el arrendamiento. Como vemos, es claro el ánimo de reconducir que tiene el arrendatario pues el mismo se demuestra al éste permanecer disfrutando de la cosa. Si no hay requerimiento por parte del arrendador, la ley presume su consentimiento tácito a la reconducción. Se destruye dicha presunción, por parte del arrendador, mediante el requerimiento. Pero, de todos modos, el término del nuevo contrato es el dispuesto por el citado Art. 1471, esto es, por años si se había fijado un canon anual, por meses cuando el canon era mensual y por día si era diario. Castán, 4 *Derecho Civil Español, Común y Foral*, 9na. ed. rev. (1969), pág. 302; Manresa, *Comentarios al Código Civil Español*, Tomo 10, Vol. 2, 6ta.

ed. rev. (1969), págs. 217–229; Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 2, Vol. 2 (1956), pág. 294.

■ Es un error acudir al derecho común anglosajón para resolver situaciones que, como la del caso de autos, están reguladas por el derecho civil. A propósito de ésto y por vía de ejemplo copiamos las siguientes palabras del jurista español Don Federico De Castro y Bravo:

"El Derecho es uno en su fundamento, vario en su realización; puede ser simple instrumento técnico para una convivencia y puede ser expresión de la idea de vida que anima a una comunidad nacional; aquél es mero conjunto de normas, sólo éste merece el nombre de Derecho nacional. Significa entonces algo más que limitación de arbitrios, que medida de intereses o que escalonamiento de normas; es el reflejo del sentir de un pueblo, la tradición cristalizada en reglas de buen vivir y la concreción de un ideal de vida.

Para el conocimiento y aplicación de disposiciones meramente técnicas, bastarán simples procedimientos abstractos; para la justa comprensión y debida realización de normas nacionales hará falta conocer la letra de sus reglas, pero también y ante todo, sus principios propios y esenciales.

Los juristas no pueden tratar del mismo modo a la disposición nacional que a la extranjera. Cuando el juez nacional aplique, por imperativos del Derecho internacional privado, una regla extraña, lo hará con el respeto y deferencia que un huésped merece, pero también con la prudente desconfianza necesaria frente al enemigo posible; cuando se trate de una regla nacional —de la misma de Derecho internacional privado—actuará en deber de íntima colaboración.

Nuestro Derecho civil no es sólo Derecho civil, es el Derecho civil de España. Forma una unidad en el tiempo y en el espacio, a través de los cambios de disposiciones y por encima de arbitrarias divisiones de disciplinas. Está animado por los principios que forman los caracteres indelebles de la Hispanidad y dirigido hacia la realización de los fines de España. Debajo de la corteza más o menos extranjerizada de los textos legales, habrá que buscar los principios españoles, los que les dan alma y los hace eficaces y apropiados en y para España.

Esta distinción evidente y primaria explica y justifica, contra críticas más bien intencionadas que profundas, que el Tribunal Supremo, custodio de las leyes nacionales, no intervenga en casación por infracción de leyes extranjeras, y que se exija la alegación y prueba de éstas. El Derecho extranjero se aplica como ordenador de intereses particulares y en reconocimiento de la legalidad creada por otros Estados, pero el conocimiento y mantenimiento de sus principios no es tarea española. Nuestros Tribunales, en cambio, tienen que salvaguardar—al aplicar el Derecho extraño—la intangibilidad de las instituciones nacionales básicas; de ahí también la intervención del orden público, impidiendo la aplicación de ciertas leyes extranjeras peligrosas.

El estudio del Derecho comparador de legislaciones extranjeras y forasteras doctrinas puede ser útil, es ajena experiencia aprovechable, pero puede ser causa de desviaciones perturbadoras y de servil seguir ajenas modas; del mismo modo que el conocer otras lenguas puede ensanchar el horizonte espiritual, pero puede también ser fuente de extranjerismo en vocablo y pensamiento. En un pueblo de fuerte vitalidad uno y otro conocimiento no serán conducto pasivo para recibir ajenas influencias, sino instrumento para conocer mejor las propias características. El penetrar en la esencia de nuestro Derecho es un deber de español; conocer el Derecho extranjero es una labor de información y técnica." (³)

*En vista de lo anterior, se revocará la sentencia recurrida y se dictará otra declarando con lugar la demanda.*

El Juez Asociado Señor Martín concurre en el resultado.

---

(³) *Derecho Civil de España*, Parte General, Tomo I (1955), págs. 151–152. Véase también Puig Brutau, *La Acción Recíproca del Derecho Español y del Derecho Norteamericano en Puerto Rico*, 44 Rev. de Derecho Puertorriqueño 499 (1972).