Gabriel Fagot RODRIGUEZ,
et al., Plaintiffs,

v.

The REPUBLIC OF COSTA RICA,
et al., Defendants.

Civil No. 93–2406 (DRD).

United States District Court,
D. Puerto Rico.

July 19, 1996.

Victor J. Casal–Vazquez, San Juan, PR, Jose G. Fagot–Diaz, Hato Rey, PR, for plaintiffs.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for The Republic of Costa Rica, The Consulate of the Republic of Costa Rica.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before this Court are cross motions for summary judgment. Defendants the Republic of Costa Rica and the Consulate of the Republic of Costa Rica have moved for summary judgment requesting that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction.[1] (Docket No. 50). Plaintiffs Gabriel Fagot Rodriguez, Angeles Diaz de Fagot, and the legal conjugal partnership (the "Fagots") filed an Opposition to Defendant's motion and moved for summary judgment requesting that the Court determine that Defendants are not entitled to sovereign immunity. (Docket No. 83). Subsequently, Defendant filed a Reply thereto. (Docket No. 84). For the reasons set forth below, this Court grants Defendants' Motion for Summary Judgment, finding that Costa Rica is entitled to sovereign immunity, and denies Plaintiffs' Motion for Summary Judgment.

1. The Court utilizes Costa Rica and the Republic of Costa Rica as interchangeable terms. In addition when referring to any one of these two terms, the Court also incorporates within those terms the Consulate of the Republic of Costa Rica.

2. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citing *Coyne v. Taber Partners I*, 53 F.3d 454, 457–58 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham,*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in those cases in which "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The intricacies and general standards of Rule 56, have been documented by the First Circuit Court in a "cascade of cases."[2] The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to avoid the entering of summary judgment, the opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553.

A fact is material if, under applicable substantive law, it may affect the result of the case. *Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 71 (1st Cir.1990). A dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Id.* A court should deny a motion for summary judgment if the dispute about a material fact is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is warranted, the Court views the facts alleged in the light most favorable to the nonmoving party and must indulge all inferences in favor of that party. *See Le Blanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725

43 F.3d 731, 735 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993); *United States v. Plat 20, Lot 17*, 960 F.2d 200, 204 (1st Cir.1992); *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 351–52 (1st Cir.1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115–16 (1st Cir.1990); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 7–8 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48–49 (1st Cir.1990)).

(1st Cir.1995); *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995); *John & Kostas Service Station, Inc. v. Cumberland Farms, Inc.,* 948 F.2d 821, 822 (1st Cir.1991).

The party opposing the motion for summary judgment can not rely on "mere allegations or denials" of the pleadings. Fed. R.Civ.P. 56(e). Rather, the opposing party must be able to show by affidavits, depositions, answers, and admissions in the record that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

## FACTUAL SUMMARY

The instant case involves a landlord-tenant dispute. Concisely stated the landlord alleges that the tenant did not pay rent and during the lease term damaged the property. The interesting twist to such an ordinary scenario is the involvement of a sovereign nation.

On September 25, 1991, the Fagots and the Fourniers entered into a lease agreement whereby the Fagots agreed to lease to the Fourniers a residential property located in the neighborhood of Santa Maria. The Fourniers, Mrs. Hilda Fournier Alpiza and Mr. Angelo Antonio Greco Fournier, served as consuls of Costa Rica in Puerto Rico.[3] The lease period was for two years, commencing on October 1, 1991 until September 30, 1993. The lease provided that a rent of $2,500.00 would be paid monthly by the fifth day of every month. The Fourniers signed the lease in their individual capacity and not as representatives of Costa Rica. The contract required that the leased property be used exclusively for residential purposes.[4] Costa Rica is only mentioned in the lease in a clause which explains that the Fourniers, as consuls, are receiving from the Costa Rican

government a $2,000.00 monthly residential allowance and any increase in the rental allowance shall affect an increase in the monthly rent paid to the Fagots.[5] Notwithstanding the mandate of the contractual clause, the exclusive use of the property for residential purposes, the Fourniers placed the Costa Rican consulate on the premises.

The Fourniers moved onto the premises and all was well until the Fourniers failed to pay the rent for the month of June 1993. As a result, in a letter dated June 16, 1993, the Fagots notified the Fourniers that the lease was terminated and the Fourniers had to vacate the premises by July 16, 1993. On September 30, 1993, Plaintiffs filed the instant suit against the Fourniers, the Republic of Costa Rica, and the Consulate of the Republic of Costa Rica alleging breach of contract, personal injury, damage or loss of property, collection of monies, and eviction as a result of Defendants' alleged breach of the lease agreement.

## ANALYSIS

After considering two oral arguments before this Court, the parties' submittals to the Court, and examining the facts in the light most favorable to the nonmoving party,[6] it is evident that there are no genuine issues of material fact. *See LeBlanc,* 6 F.3d at 841. The issue before the Court is whether, according to the facts of the instant case, Costa Rica is entitled to sovereign immunity pursuant to the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C.A. §§ 1330, 1602–11 (West 1994).

The FSIA provides the exclusive source for obtaining jurisdiction over foreign states in United States courts. "Under the Act, a foreign state is presumptively immune

3. The Fourniers are also Defendants in the instant action, although not part of the present motion for summary judgment.

4. This requirement was included in clause 3 of the lease agreement.

5. Clause 19 of the lease specifically states that the lessees have manifested to the lessors that since they are consul and vice-consul to the Republic of Costa Rica in Puerto Rico, they receive an appropriation from their government of $2,000.00 a month for the payment of their resi-

dence; in the eventuality that the government of Costa Rica increment said appropriation, proportionate to that incremental amount the monthly rent shall also be augmented. (Docket No. 13) (the Court's translation).

6. These oral arguments were held on March 28, 1996 and on May 9, 1996. Both parties argued the merits of their respective motions for summary judgment pertaining to the issue of sovereign immunity.

from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993) (citation omitted). Plaintiff claims that Costa Rica is subject to jurisdiction because it falls within the purview of several exceptions to sovereign immunity. 28 U.S.C.A. § 1605.

█ The jurisprudence sets forth a burden shifting framework. The burden shifting analysis is as follows. Sovereign immunity is an affirmative defense and as such the foreign state bears the ultimate burden of proving, by a preponderance of the evidence, immunity. *See Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). Initially, there exists a presumption that "actions taken by foreign states or their instrumentalities are sovereign acts and thus are protected from the exercise of our jurisdiction, unless one of the FSIA's exceptions to immunity applies." *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1021 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). The opposing party then bears the burden of moving forward by producing evidence that there is an applicable exception to sovereign immunity. *Id.* Once that burden is met, the burden then shifts to the foreign state who "bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Id.*

The Court thus analyzes the exceptions claimed by Plaintiffs.

### Commercial Activity Exception

█ The commercial activity exception to sovereign immunity provides in pertinent part that:

A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C.A. § 1605(a)(2). Thus, this exception requires a two-prong analysis: (1) the alleged conduct must be a commercial activity; and (2) there must be a nexus between Plaintiffs' action and the commercial activity. *See Saudi Arabia*, 507 U.S. at 356, 113 S.Ct. at 1477. In sum, to fall within this exception, Costa Rica must have engaged in commercial activity which is related to Plaintiffs' suit.

Plaintiffs allege that Defendant Costa Rica was involved in commercial activity in leasing the residential property from Plaintiffs. Although Costa Rica was not a party to the initial lease and notwithstanding that the contract was signed by the Fourniers in their personal and individual capacity, Plaintiffs contend that Costa Rica became contractually bound once the Fourniers neglected to pay rent and were asked to vacate the premises upon the termination of the contract. Plaintiffs contend that once the consuls remained on the premises, Costa Rica assumed the lease on a month-to-month basis.[7]

█ If Costa Rica is bound by the contract, then it is participating in commercial activity, and thus, not entitled to sovereign immunity. *See Joseph*, 830 F.2d at 1024 (finding Nigeria to be excepted from sovereign immunity under the commercial activity exception when a consular officer signed the lease on behalf of the consulate). The rationale underlying such a holding is the definition given to a commercial activity. An activity is commercial in nature if a private actor could take part in that type of activity.[8]

---

7. Plaintiffs allege that "once the lease agreement was terminated by the [plaintiffs], the plaintiffs expressly demanded that for each month that defendants remained in the property, they were to compensate the owners in the amount of $5,000.00 for its use."

8. This test exemplifies that operating a consulate is not a commercial activity. *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 920 (D.C.Cir.), *modified on other grounds*, 823 F.2d 606 (D.C.Cir.1987) (agreeing with the lower court's holding that "operation of a chancery is,

*Id.* Logically, a private actor can take part in a lease and should Costa Rica have entered into a lease the first prong of the commercial activity test would be fulfilled.

■ Unlike the facts in *Joseph*, the Fourniers signed the lease in their individual capacity and not on behalf of the consulate. Further, the contract mandated that the property be used exclusively as a residence. However, Plaintiffs argued two other contractual theories binding the Republic of Costa Rica to the lease agreement between Plaintiffs and the Fourniers. The two theories are: (1) tacit relocation and (2) assumption of debt. This Court concludes that these two theories are inapplicable and do not bind the sovereign nation.

■ Tacit relocation is codified under P.R. Laws Ann. tit. 31 § 4063 (1990), which provides that an implied lease arises if at the end of the original lease term, the lessee remains on the premises for at least fifteen (15) days with the acquiescence of the lessor. The Puerto Rican jurisprudence identifies five requisite elements for tacit relocation: (1) that the parties be contractually related;[9] (2) that the original lease expired; (3) that the lessee remain on the premises fifteen (15) days; (4) that such enjoyment of the premises be with the acquiescence of the lessor; and (5) that there should exist no express or implied covenant barring such tacit relocation. *R.F. Realty Corp. v. J. Gus Lallande, Inc.*, 87 D.P.R. 351, 356–57 n. 5 (1963). The doctrine of tacit relocation is inapplicable. A requisite to tacit relocation is that the parties be contractually related; the Republic of Costa Rica and the Fagots were not contractually related. The only contractual relationship was between the Fagots and the Fourniers.

■ Plaintiffs also contend that the Republic of Costa Rica assumed the month-to-month rental obligation of the Fourniers. The Puerto Rico Supreme Court explains that a third party can assume responsibility

for another party's obligation under two theories, novation or assumption. *Teachers' Annuity & Retirement Sys. v. La Sociedad de Gananciales*, 115 D.P.R. 277, 289 (1984). A novation requires the manifest consent, in a certain and positive manner. *See* P.R. Laws Ann. tit. 31 § 3243 (1990). The creditor's consent can also be implied through his actions and as such can be an assumption. *See* P.R. Laws Ann. tit. 30 § 2560 (1993) ("[W]ith respect to ... personal obligations secured therein, the seller shall be released from said obligations, if the creditor gives his express or tacit consent."). *See also Teachers' Annuity*, 115 D.P.R. at 291 (explaining that mere acceptance by creditor of payment by third party does not indicate creditor's tacit consent). The Puerto Rico Supreme Court, however, stated that "acceptance of payments in circumstances that reveal a pattern of conduct of which can be deriven an intent to accept a new debtor constitutes, without a doubt, tacit consent." *Id.* (our translation).

There is no evidence before this Court that the Republic of Costa Rica assumed the month-to-month obligation under either the theory of novation or assumption. There was no evidence of manifest consent brought before the Court by Plaintiffs so as to constitute a novation. There is also no evidence of an assumption, that Plaintiff tacitly consented to release the Fourniers of their obligation and to permit the Republic of Costa Rica to assume the obligation. There is neither a pattern of payment nor any type of conduct to indicate tacit consent. Further, the letters of collection and of eviction submitted to the Court were addressed to the Fourniers in their individual and personal capacity and no copy of the letters was sent to any representative of the government of Costa Rica. Moreover, checks paid to Plaintiffs by Fourniers for overdue rent in both July of 1993 and August of 1993 were personal checks and as such demonstrate that there was no involvement by Costa Rica.

by its nature, ... governmental, not commercial.").

**9.** The official spanish version of *R.F. Realty Corp. v. J. Gus Lallande, Inc.*, 87 D.P.R. 351 (1963), uses the term "vinculados contractualmente,"

also meaning contractually "linked," "bonded," or having a "contractual vinculum." Simon & Schuster's Int'l Dictionary Spanish/English (1973).

■ The Republic of Costa Rica was a mere third party beneficiary to the lease agreement between the Fourniers and the Fagots.[10] The Fourniers signed the lease in their individual capacity, paid the rent,[11] and maintained their place of employment at their residence. The Republic of Costa Rica, as a third party beneficiary, enjoyed the use of the premises as a consulate while not contractually bound to the lease. Consequently, Costa Rica did not engage in commercial activity because the sovereign is not a party under a lease agreement and this exception is thus inapplicable.

### Tortious Activity Exception

■ Plaintiffs contend that the tortious activity exception is applicable to the present case. The tortious activity exception to sovereign immunity provides in pertinent part that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.

28 U.S.C.A. § 1605(a)(5). As in the commercial activity exception, the applicability of this exception also requires the satisfaction of a two-prong test. The test first requires that the tortious conduct be within the scope of the agent's employment. *Joseph,* 830 F.2d at 1025 (the scope of employment analysis requires "a finding that the doctrine of respondeat superior applies to the tortious acts of individuals"). In other words, to fulfill the requirements of this exception, the Fourniers' conduct must have been within the scope of their employment with Costa Rica.

The test then requires an analysis of the tortious conduct. If the conduct is a discretionary function of the employment, then there could possibly be sovereign immunity. *MacArthur Area Citizens Ass'n,* 809 F.2d at 921. However, if the tortious conduct is not a discretionary function, then the foreign state is excepted from sovereign immunity.

■ Plaintiffs contend that the Fourniers caused several thousands of dollars in damages to the property which is the subject of this litigation.[12] However, Plaintiffs have failed to meet the first prong of the test, the scope of the employment prong. In their cross claim for Summary Judgment, Plaintiffs provided this Court with a cursory overview of the tortious activity exception without producing evidence to the Court on the scope of the employment.

■ The Fourniers acts were not within the scope of their employment and were discretionary functions. Under Puerto Rico jurisprudence, to determine whether an employee acted within the scope of his employment three factors must be considered: (1) desire to serve, benefit, or further his/her employer's business or interest; (2) that the act is reasonably related to the scope of the employment; and (3) that the agent has not been prompted by purely personal motives. *Attallah v. United States,* 955 F.2d 776, 782 (1st Cir.1992). *See also Perez Rodriguez v. Sauri,* 84 D.P.R. 500, 503–04 (1962) ("[I]n order for liability to lie on part of the employer, regardless of whether the employee's actions

---

10. **"Third party beneficiary.** One for whose benefit a promise is made in a contract but who is not a party to the contract." Black's Law Dictionary 1480 (6th ed.1990).

11. Although the lease, at clause 19, states that Costa Rica was paying the Fourniers a two thousand dollar ($2,000.00) per month residential allowance, the clause did not bind Costa Rica to pay the Fagots. The purpose of the clause was to bind the Fourniers to an increase in rent. If the rental allowance was increased, then the Fourniers became obligated to pay that amount to Plaintiffs.

12. In the Amended Complaint, Plaintiffs enumerate these damages. The damages include excessive wear and tear to various areas of the house, damage to trees and the lawn, as well as the alteration of a structural wall.

were against the employer's instructions or exceeded the duties of his employment, said act must have had the intention of benefitting the employer or forwarding his/her interests."). Any damage caused to the premises, whether structural or aesthetic, was not within the scope of the Fourniers' employment. There is no evidence before the Court that the alleged damage was for the benefit or intended to serve Costa Rica.

■ Even if the conduct of the Fourniers is within the "scope of employment," in the instant case, the Fourniers were performing a "discretionary function." The discretionary function exception was enacted by Congress to protect sovereign immunity for decisions grounded on social, economic, and political policy. *MacArthur Area Citizens Ass'n*, 809 F.2d at 922. In determining the applicability of the exception, the Court must consider the "nature of the conduct, rather than the status of the actor." *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)). As expressed in *MacArthur Area Citizens Ass'n*, the establishment of a chancery or consulate is a discretionary function. Consequently, this public policy decision "undergirds the specific acts which the [Plaintiffs] bewail[ ]." *MacArthur Area Citizens Ass'n*, 809 F.2d at 922. In sum, the decision to establish the consulate was a discretionary function and as follows the alleged damage stemming from the establishment are also discretionary. Accordingly, the exception is inapplicable.

### International Takings Exception

Plaintiffs also argue that their property rights were taken in violation of international law and thus the following exception is applicable to the instant case. This exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States ... in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such party is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state....

28 U.S.C. § 1605(a)(3).

■ As previously discussed, the Republic of Costa Rica did not engage in commercial activity. The residential property was leased by the Fourniers in their personal and individual capacity and utilized as a consulate. The establishment, administration, and operation of a consulate is not a commercial activity.

■ Moreover, Plaintiffs also failed to meet their burden of production. In the jurisdictional stage a court need not determine whether a taking violated international law, "as long as a 'claim is substantial and nonfrivolous, it provides a sufficient basis for the exercise of our jurisdiction.'" *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 711 (9th Cir.1992) (quoting *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 826 (9th Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2483, 96 L.Ed.2d 375 (1987)), *cert. denied*, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). However, Plaintiffs burden of production requires them to produce evidence of the alleged exception. *Joseph*, 830 F.2d at 1021. There is no evidence before the Court that there was a taking and that the property was utilized in connection with a commercial activity. This exception is thus inapplicable.

### Immovable Property Exception

Plaintiffs allege that since this action involves immovable property then this exception is applicable. Specifically, Plaintiffs aver that "it is very difficult, if not impossible, to fathom that this case does not involve the Fagots' rights in the immovable property, which was taken by defendants and no just compensation was made by them for their use."

This exception provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case in which rights in

property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue.

28 U.S.C. § 1605(a)(4).

 The immovable property exception is applicable to disputes directly involving property interests. This exception must not be broadly construed so as to "abrogate immunity for any action touching upon real estate." *MacArthur Area Citizens Ass'n,* 809 F.2d at 921. In other words, sovereign immunity is excepted if there is an issue as to who has the right of possession or use of the land. In the instant case, there is only a monetary dispute. There is no doubt that Plaintiffs own the property and have both the right of use and possession. Plaintiffs now seek financial compensation for the alleged damages and for unpaid rent. Compensation rights do not fall within the meaning of the immovable property exception because there is no direct claim to the property. *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1523 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985). "Resolution of [compensation] claims will not in any conceivable way affect property interests in, or rights to possession of land located in the United States." *Id.* at 1524. Thus, this exception is inapplicable.

### CONCLUSION

For the reasons stated above, the Court hereby DISMISSES Plaintiffs claims **WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**